John E. Hill, State Bar #45338
Enrique Martínez, State Bar #206884
LAW OFFICES OF JOHN E. HILL
333 Hegenberger Road, Ste. 500
Oakland, CA 94621
Telephone:  (510) 588-1000
Facsimile: (510) 632-1445
enriquemartinez@hill-law-offices.com

*Attorneys for Plaintiffs & Putative Class*

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| MARIO CORTEZ, MARIA CISNEROS, ANTONIO TOSCANO, FRANCISCO JAVIER GONZALEZ, JESUS RODRIGUEZ, CECILIA GARCIA, JOSE LUIS RAYGOZA, and JOSE GUZMAN, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>VIEIRA CUSTOM CHOPPING, INC., a California Corporation; V & S COMMODITY, INC., a California Corporation; CHRISTINA VIEIRA; and MATTHEW SEPEDA,<br><br>                          Defendants. | Case No.: 1:17-CV-01647-DAD-SKO<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>Judge:  Hon. Dale A. Drozd<br>Date:    TBD<br>Time:   9:30 a.m.<br>Place:   Courtroom 5 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

    I.     Factual Background ................................................................................. 3

    II.    Procedural History ................................................................................. 5

    III.   Proposed Settlement ............................................................................... 6

         A.    Settlement Class ......................................................................... 6

         B.    Settlement Terms ........................................................................ 6

             1.    Expenses of the Claims Administrator ........................... 6

             2.    Payment to California Labor and Workforce Development Agency ............................................................................ 6

             3.    Incentive Payments to Named Plaintiffs ........................ 7

             4.    Attorney Fees and Costs ............................................... 7

             5.    Allocation of Net Settlement Fund ................................ 7

             6.    Unclaimed Funds .......................................................... 7

             7.    Release of Claims ......................................................... 8

         C.    Implementation Schedule ........................................................... 8

ARGUMENT ...................................................................................................... 9

    I.     The Court Should Preliminarily Certify the Settlement Class ................ 9

         A.    The Rule 23(a) Prerequisites Are Met ...................................... 10

             1.    The Proposed Class Satisfies the Numerosity Requirement ......... 10

             2.    The Commonality Requirement Is Met ....................... 10

             3.    The Typicality Requirement Is Met .............................. 11

             4.    Plaintiffs and Their Counsel Satisfy the Adequacy Requirement ................................................................. 11

         B.    The Rule 23(b)(3) Requirements Are Met ................................ 12

             1.    Common Questions Predominant over Individual Questions ....... 13

             2.    Class Treatment Is Superior to Individual Treatment ................. 13

    II.    The Court Should Conditionally Certify the Collective Action Under the

       FLSA ...................................................................................................... 14

III.     The Proposed Settlement Meets the Requirements for Preliminary Approval ..... 15

      A.    A Bona Fide Dispute Exists for the FLSA Claim ..................................... 16

      B.    The Settlement Process Was Procedurally Fair.......................................... 17

      C.    The Settlement Agreement Is Substantively Fair ...................................... 18

            1.    The Settlement Amount Is Adequate ............................................ 18

            2.    The Attorney Fees and Costs Are Reasonable ............................. 20

            3.    The Incentive Payment Is Reasonable........................................... 21

            4.    The Narrow Release of Class and FLSA Claims ......................... 23

IV.    Notice ..................................................................................................................... 24

      A.    The Proposed Method and Form of Class Notice Is Fair and Adequate ... 24

      B.    The FLSA Notice Is Proper ...................................................................... 25

CONCLUSION ............................................................................................................... 25

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Acosta v. Frito-Lay, Inc.*

4

(N.D. Cal**.** Jan. 31, 2018) No. 15–CV–02128–JSC, 2018 WL 646691...………..2, 17, 18, 21

5

*Aguilar v. Wawona Frozen Foods*

6

(E.D. Cal. May 19, 2017) No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936……....…… 22

7

*Alberto v. GMRI, Inc.*

(E.D. Cal. 2008) 252 F.R.D. 652, 665……………………………………………………….2

8

*Amchem Products, Inc. v. Windsor*

9

(1997) 521 U.S. 591……………………………………………………………….13, 14

10

*Armstrong v. Davis*

(9th Cir. 2001) 275 F.3d 849...…………………………………………………………11

11

*Arredondo v. Delano Farms Co.*

12

(E.D. Cal. Sept. 23, 2017)No. 1:09-CV-01247-MJS, 2017 WL 4340207 …………….....20

13

*Betancourt v. Advantage Human Resourcing, Inc.*

(N.D. Cal. Jan. 28, 2016) No. C-11-00594 DMR, 2014 WL 954516……………………...20

14

*Brinker Rest. Corp. v. Superior Court*

15

273 P.3d 513, 537 (Cal. 2012))…………………………………………….…………4, 5

16

*Chamberlan v. Ford Motor Co.*

(N.D. Cal. 2004) 223 F.R.D. 524, 527………………………………………………...13

17

*Covillo v. Specialtys Café*

18

(N.D. Cal. Mar. 6, 2014) No. C-11-00594 DMR, 2014 WL 954516………………………22

19

*Farmers Reservoir & Irrigation Co. v. McComb.*

(1949) (citing 29 U.S.C. § 203(f)) 337 U.S. 755, 762-6………..…………………16, 17

20

*Garnett v. ADT, LLC*

(E.D. Cal. June 28, 2016) No. CV 2:14-02851 WBS AC, 2016 WL 3538354...…………22

21

*Harris v. Vector Mktg. Corp.*

22

(N.D. Cal. Apr. 29, 2011)) No. 08–5198, 2011 WL 1627973…....…………………17, 19

23

*In re Bluetooth Headset Prods. Liability Litig.*

(9th Cir. 2011)654 F.3d 935, 946 ...……………………………………………….. 20

24

*In re Mego Fin. Corp. Sec. Litig.*

25

213 F.3d 454, 462 (9th Cir. 2000))……………………………………...………12, 18

26

*In re Online DVD-Rental Antitrust Litigation*

(9th Cir. February 27, 2015) 2015 WL 846008………………………………………….21

27

*In re Syncor ERISA Litig.*

28

(9th Cir. 2008) 516 F.3d 1095……….…………………………………………..…15

*Lewis v. Vision Value, LLC*
 (E.D. Cal. July 18, 2012)No. 1:11-CV-01055-LJO-BAM, 2012 WL 2930867...............15
*Lewis v. Wells Fargo & Co*
 (N.D. Cal. 2009) 669 F. Supp. 2d 1124, 1128...............................................14
*Linney v. Cellular Alaska P'ship*
 (9th Cir. 1998)151 F.3d 1234, 1238........................................................15
*Milburn v. PetSmart, Inc.*
 (E.D. Cal. Apr. 18, 2019) No. 1:18-cv-00535-DAD-SKO, 2019 WL 1746056...........passim
*Nelson v. Avon Prod., Inc.*
 (N.D. Cal. Feb. 24, 2017) No. 13-CV-02276-BLF, 2017 WL 733145...........................22
*Nen Thio v. Genji*, LLC
 (N.D. Cal. 2014)14 F. Supp. 3d 1324, 1335...............................................18
*NLRB v. Olaa Sugar Co.*
 (9th Cir. 1957) 242 F.2d 714, 718...........................................................16
*Palana v. Mission Bay Inc.*
 (N.D. Cal. July 7, 2015)No. 13-CV-05235-SI, 2015 WL 4110432.......................10
*Pointer v. Bank of Am., N.A.*
 (E.D. Cal. Dec. 21, 2016) No. 2:14–CV–00525–KJM–CKD, 2016 WL 7404759..........20
*Richardson v. THD At-Home Servs., Inc.*
 (E.D. Cal. Apr. 6, 2016) No. 1:14-CV-0273-BAM, 2016 WL 1366952....................9
*Rodriguez v. W. Publ'g Corp.*
 (9th Cir. 2009)) 563 F.3d 948, 958...................................................20, 21
*Ruch v. AM Retail Grp., Inc.*
 (N.D. Cal. Mar. 24, 2016) No. 14–CV–05352–MEJ, 2016 WL 1161453...............18, 23
*Ruiz Torres v. Mercer Canyons Inc.*
 (9th Cir. 2016) 835 F.3d 1125, 1141...................................................11, 13
*Singh v. Roadrunner Intermodal Servs., LLC*
 (E.D. Cal. Jan 24, 2019) ) No. 1:15-cv-01497_DAD-BAM, 2019 WL 316814...........22, 23
*Staton v. Boeing*
 (9th Cir. 2003) 327 F.3d 938.........................................................2, 15
*Talavera v. Sun Maid Growers of Cal.*
 (E.D. Cal. Nov. 16, 2015) No. 1:15-cv-00842-AWI-SAB, 2015 WL 7187960...............14
*Tapia v. Zale Delaware Inc.*
 (S.D. Cal. Apr. 6, 2016) No. 13-CV-1565-BAS (PCL), 2016 WL 1385181..............10
*Taylor v. FedEx Freight, Inc.*
 (E.D. Cal Oct. 13, 2016) No. 13-CV-01137-DAD-BAM, 2016 WL 6038949...........22
*Valentino v. Carter-Wallace, Inc.*
 (9th Cir. 1996)97 F.3d 1227, 1234-35..................................................13
*Wal-Mart Stores, Inc. v. Dukes*

(2011) 131 S. Ct. 2541…………….……….…………..………………………..…10, 11

*Zinser v. Accufix Research Inst., Inc.*

   (9th Circ. 2001) 253 F.3d 1180 ……………………………………………………14


**STATUTES**

Cal. Bus. & Prof. Code § 17200……………………………………………………1, 5

Cal. Civil Code § 1542……………………………………………………………….22

Cal. Lab. Code § 2698 ("PAGA")……………………………………………… 1, 5

Cal. Lab. Code § 201……………………………………………………….…...5

Cal. Lab. Code §202………………………………………………………..…5

Cal. Lab. Code §203………………………………………………………….5

Cal. Lab. Code § 226……………………………………………..……………5

Cal. Lab. Code § 2699…………………………………………..…….……..7

Cal. Lab. Code § 226……………………………………………..……..…...5

Cal. Lab. Code § 512……………………………………………….…….…...4, 5

Fair Labor Standards Act 29 U.S.C. §§ 201, et seq ("FLSA")……………………. passim


**RULES**

Fed. R. Civ. P. 23 ..................................................................................... passim

29 C.F.R. § 780.105(d), 780.129, 780.132, 780.144 ……………………………17, 18

1

### INTRODUCTION

2      This hybrid class and collective action seeks damages and penalties for unpaid overtime

3   wages, meal and rest period violations, and other violations, for the putative classes employed by

4   Defendants Vieira Custom Chopping, Inc., V & S Commodity, Inc., Christina Vieira, and Matthew

5   Sepeda (collectively "Defendants").  Plaintiffs Mario Cortez, Maria Cisneros, Antonio Toscano,

6   Francisco Javier Gonzalez, Jesus Rodriguez, Cecilia Garcia, Jose Luis Raygoza, and Jose Guzman

7   allege claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); the California

8   Labor Code; Business and Professions Code § 17200 *et seq.*; and the California Private Attorney

9   General Act, Labor Code § 2698 *et seq.* ("PAGA").

10      Plaintiffs now seek preliminary approval under Federal Rule of Civil Procedure 23(e) and

11   the FLSA of a proposed settlement reached with Defendants ("Settlement Agreement"), a copy of

12   which is attached as Exhibit 1 to the accompanying Declaration of Enrique Martínez in Support of

13   Motion for Preliminary Approval of Class and Collective Action Settlement ("Martínez Decl.").

14   Plaintiffs also seek preliminary certification of a class under Rule 23, appointment of Plaintiffs'

15   counsel as Class Counsel, and appointment of the Named Plaintiffs to represent the Settlement

16   Class; conditional certification of a collective action under the FLSA; approval of the proposed

17   method and form of notice to the members of the class and collective action, approval of the opt-in

18   procedures for the collection action, and approval of the Implementation Schedule (see Martínez

19   Decl., Exhibits 1A–1D to the Settlement Agreement); approval of CPT Group Class Action

20   Administrators as the Claims Administrator; and the scheduling of a final fairness hearing.

21      Subject to the Court's approval, the basic terms of the Settlement Agreement include

22   payment by Defendants of $450,000 to a common fund for distribution to members of the class and

23   collective action, after payment of the cost of notice and claims administration, the PAGA payment

24   to the California Labor and Workforce Development Agency ("LWDA"), the incentive payments to

25   the Named Plaintiffs, and attorney fees and costs.  Defendants will make a separate payment to

26   cover the employers' share of payroll taxes on the amount designated as wages. Any unclaimed

27   FLSA wages will be redistributed among members of the FLSA collective action.  No funds will

28

1    revert to Defendants; instead, any residual funds will be paid to Centro de los Derechos del

2    Migrante, Inc., a nonprofit organization, as *cy pres* recipient.

3         At final approval, Class Counsel will seek an incentive payment of $7,500 for each Named

4    Plaintiff for their time, effort, and risk in bringing this lawsuit on behalf of the class.  Class Counsel

5    will also seek attorney fees equal to 25 percent of the common fund ($112,500, which is less than

6    the lodestar amount), and costs up to $8,900.

7         Rule 23(e) requires the Court to determine whether a proposed settlement is

8    " 'fundamentally fair, adequate and reasonable.' "  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir.

9    2003) (citation omitted).  Some of the fairness factors cannot be fully assessed until the Court

10   conducts the final approval hearing, and thus " 'a full fairness analysis is unnecessary at this

11   [preliminary approval] stage.' "  *Acosta v. Frito-Lay, Inc.,* No. 15–CV–02128–JSC, 2018 WL

12   646691, at *7 (N.D. Cal. Jan. 31, 2018) (quoting *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D.

13   Cal. 2008)).  Preliminary approval and notice to the class is warranted " 'if the proposed settlement

14   'appears to be the product of serious, informed, non-collusive negotiations, has no obvious

15   deficiencies, does not improperly grant preferential treatment to class representatives or segments of

16   the class, and falls within the range of possible approval.' "  *Milburn v. PetSmart, Inc.*, No. 1:18-cv-

17   00535-DAD-SKO, 2019 WL 1746056, at *4 (E.D. Cal. Apr. 18, 2019) (citations omitted).  These

18   factors support preliminary approval of the proposed Settlement Agreement here.

19        Similarly, preliminary approval is warranted as to the FLSA claim because "the settlement is

20   a fair and reasonable resolution of a bona fide dispute."  *Milburn*, 2019 WL 1746056, at *4.

21   Accordingly, the Court should preliminarily approve the settlement in this class and collective

22   action.[1]

23   //

24   //

25   //

26

27   [1]   After this motion is filed with the Court, the motion and all supporting papers will be filed with
     the LWDA, and then a proof of service on the LWDA will be filed with this Court.  Martínez Decl.

28   ¶ 35.

**BACKGROUND**

**I.      Factual Background**

Defendants provide commercial services to dairy farms.  (Martínez Decl. ¶ 10.)  Defendants employed the Named Plaintiffs and their co-workers in Defendants' shop in Tulare and in other areas of the Central Valley of California.  (*Id.*)  Defendants employ four groups of employees:  shop workers, farm equipment operators, truck drivers, and weighers.  (*Id.*)

The operators, truck drivers, and weighers work during the wheat and corn seasons.  The operators work at Defendants' clients' fields, operating farm equipment to harvest corn and wheat.  (*E.g.*, Cortez Decl. ¶ 2; Martínez Decl. ¶ 10.)  The truck drivers transport the corn and wheat from the clients' fields to the clients' dairy farms, where the grain is used to feed the cows.  (*E.g.*, Cisneros Decl. ¶ 2; Martínez Decl. ¶ 10.)  The weighers weigh the grain at the dairy farms, so that Defendants can bill the dairy farms for it.  (*E.g.*, Garcia Decl. ¶ 2; Martínez Decl. ¶ 10.)  The shop workers work at Defendants' shops servicing the trucks and the harvesting equipment.  (*E.g.*, Cortez Decl. ¶ 2; Martínez Decl. ¶ 10.)  Some employees work in the shop the entire year, and some of operators, truck drivers, and weighers work in the shop in the off-season.  (*Id.*)

The Named Plaintiffs worked for Defendants in different positions for varying lengths of time.  (Martínez Decl. ¶ 11.)  Mr. Guzman is an operator and shop worker, and the only Plaintiff who is still working for Defendants.  (Guzman Decl. ¶ 2.)  Mr. Cortez was also an operator and shop worker.  (Cortez Decl. ¶ 2.)  Messrs. Gonzalez, Raygoza, and Toscano were shop workers.  (Gonzalez Decl. ¶ 2; Raygoza Decl. ¶ 2; Toscano Decl. ¶ 2.)  Ms. Cisneros and Mr. Rodriguez were truck drivers, and Ms. Garcia was a weigher.  (Cisneros Decl. ¶ 2; Garcia Decl. ¶ 2; Rodriguez Decl. ¶ 2.)

During the corn and wheat season, all employees worked more than 12 hours per day, and at least 6 days per week.  (Cisneros Decl. ¶ 2; Cortez Decl. ¶¶ 2-3; Garcia Decl. ¶ 2; Gonzalez Decl. ¶ 3; Guzman Decl. ¶¶ 2-3; Raygoza Decl. ¶ 3; Rodriguez Decl. ¶ 2; Toscano Decl. ¶ 3; Martínez Decl. ¶ 12.)  Defendants classified all workers as exempt "agricultural" employees under state and federal law, and paid overtime compensation only after employees worked 10 hours per day or 60

1  hours per week.[2]  (Cisneros Decl. ¶ 2; Cortez Decl. ¶ 3; Garcia Decl. ¶ 2; Guzman Decl. ¶ 3;

2  Raygoza Decl. ¶ 3; Rodriguez Decl. ¶ 2; Toscano Decl. ¶ 3; Martínez Decl. ¶ 12; FAC ¶¶ 2, 23, 25,

3  26.)  Plaintiffs allege that the job duties of shop workers, truck drivers and weighers (i.e., all group

4  of employees except operators) did not fall within the FLSA agricultural exemption, and thus they

5  were entitled to overtime pay after 40 hours per week.  (FAC ¶¶ 2, 27, 35-42; Martínez Decl. ¶ 12.)

6  The time and pay records show hours worked and pay rate, and thus the amount of overtime

7  compensation owed to members of the collective action for hours worked between 40 and 60 hours

8  per week.  (Martínez Decl. ¶ 12.)

9         Plaintiffs also allege that all groups of employees are owed meal and rest period premiums.

10  (FAC ¶¶ 23-26, 43-50.)   Operators, truck drivers, and weighers did not receive meal periods until

11  April 2017; at most, they were able to eat while working.  (Cisneros Decl. ¶ 2; Cortez Decl. ¶ 2;

12  Garcia Decl. ¶ 2; Rodriguez Decl. ¶ 2; Martínez Decl. ¶ 13.)  After April 2017, there were given one

13  meal period, but the meal period was often late (i.e., it did not start within the first five hours of

14  work, *see Brinker Rest. Corp. v. Superior Court*, 273 P.3d 513, 537 (Cal. 2012)), and these

15  employees did not receive a second meal period even though they worked long enough to earn one

16  (i.e., more than ten hours, *see* Cal. Lab. Code § 512(a)).  (Martínez Decl. ¶ 13.)   In September 2017,

17  these employees began receiving both a timely first meal period and a second meal period.  (*Id.*)

18  Similarly, prior to September 2017, the shop workers' first meal period was often late, and they did

19  not receive a second meal period even when required.  (Cortez Decl. ¶ 3; Gonzalez Decl. ¶ 3;

20  Guzman Decl. ¶ 3; Raygoza Decl. ¶ 3; Toscano Decl. ¶ 3; Martínez Decl. ¶ 13.)  Defendants'

21  position is that all meal periods were provided, but employees chose not to take them.  (Martínez

22  Decl. ¶ 13.)

23         As to rest periods, operators, truck drivers, and weighers were not provided with any breaks

24  until April 2017.  (Cisneros Decl. ¶ 2; Cortez Decl. ¶ 2; Garcia Decl. ¶ 2; Guzman Decl. ¶ 2;

25  Rodriguez Decl. ¶ 2; Martínez Decl. ¶ 13.)  Beginning in April 2017, these employees were

26  provided two rest periods, but often worked long enough to earn a third rest period (i.e., more than

27

28  [2]   This is consistent with California law regarding overtime pay for agricultural workers.

ten hours, *see Brinker*, 273 P.3d at 529).  (Martínez Decl. ¶ 13.)  Similarly, shop workers often worked long enough to earn a third rest period but were only given two.  (Cortez Decl. ¶ 3; Gonzalez Decl. ¶ 3; Guzman Decl. ¶ 3; Raygoza Decl. ¶ 3;  Martínez Decl. ¶ 13.)  Defendants' position is that all rest periods were provided, but employees chose not to take them.  (Martínez Decl. ¶ 13.)

## II.     Procedural History

On December 7, 2017, Plaintiffs filed this hybrid action alleging a collective action under the FLSA, 29 U.S.C. § 216(b), and a Rule 23 class action as to the state law claims.  On January 26, 2018, Plaintiffs filed the operative First Amended Complaint.  Plaintiffs allege (1) violation of the FLSA, 29 U.S.C. § 201 *et seq*.; (2) failure to provide meal and rest periods, in violation of Labor Code §§ 226.7, 512, and IWC Wage Orders; (3) failure to provide accurate itemized wage statements, in violation of Labor Code § 226(e); (4) failure to pay all wages due upon termination, in violation of Labor Code §§ 201, 202, and 203; (5) violation of Business and Professions Code § 17200 *et seq*.; and (6) violations under PAGA, Labor Code § 2698 *et seq*.  Defendants deny the allegations.

On May 30, 2018, the parties engaged in an unsuccessful full-day mediation before Justice Steven Vartabedian (Ret.).  (Martínez Decl. ¶ 15.)  The parties agreed to engage in another mediation before the deadline to file the motion for class certification and conditional collective certification.  (*Id*.)  On May 3, 2019, the parties attended a full-day mediation session before James M. Phillips of The Phillips Group, a professional mediator who has conducted more than 2,500 mediations over the last 20 years.  (*Id*.)

Prior to mediation, Defendants produced time and payroll records and other data for the entire class, enabling Plaintiffs' counsel to calculate class members' unpaid back pay and penalties.  (*Id*. ¶ 16.)  They also produced updated time and payroll records for all of the putative class members before the second mediation.  (*Id*.)  At the time of the mediation, the disputed legal and factual issues had been clearly defined.  (*Id*. ¶ 17.)

The parties did not settle at the second mediation, but were able to reach an agreement several weeks later through a mediator's proposal.  (*Id.* ¶ 15.)  The key terms are set forth in the next section.

**III.     Proposed Settlement**

    **A.     Settlement Class**

There are 112 individuals in the Settlement Class.  (Martínez Decl. ¶ 3.)   The Settlement Class is defined as:

> all persons who are or were employed in California by Defendants as non-exempt (i) shop workers, (ii) farm equipment operators, (iii) truck drivers, and (iv) weighers at any point during the Class Period [December 7, 2013 through May 3, 2019] and who do not properly and timely opt out of the Settlement Class by having requested exclusion.

(Martínez Decl., Exh. 1, Settlement Agreement ¶¶ 6, 21.)

The FLSA collective action consists of the same employees, except that it excludes operators, and the limitations period begins on December 7, 2014 (not 2013).  (*Id.* ¶ 4.)

    **B.     Settlement Terms**

The proposed Settlement Agreement provides that Defendants will make a gross payment of $450,000 to settle this action ("Settlement Amount"), to be allocated as follows:

        **1.     Expenses of the Claims Administrator**

The parties agreed to engage CPT Group Class Action Administrators as the proposed claims administrator.  (Settlement Agreement ¶ 2; Martínez Decl. ¶ 32.)  Subject to Court approval, up to $18,500 from the Settlement Amount will be paid to CPT for the cost of notice and claims administration.  (Martínez Decl ¶ 34.)  Plaintiffs' counsel believe CPT is the best choice given the lower cost of administration as compared to other administrators and the quality of its work.  (*Id.* ¶ 32.)

        **2.     Payment to California Labor and Workforce Development Agency**

$10,000 from the Net Settlement Fund will be allocated to the settlement of PAGA claims, of which 75 percent ($7,500) will be paid to the LWDA pursuant to PAGA, Cal. Labor Code § 2699(i) and (j).  (Settlement Agreement ¶¶ 39.1(c), 39.2.)

### 3.      Incentive Payments to Named Plaintiffs

Subject to Court approval, $7,500 from the Settlement Amount will be paid to each Named Plaintiffs as an incentive payment for his or her time, effort, and risks involved in bringing this lawsuit on behalf of the class.  (Settlement Agreement ¶ 38.2.)

### 4.      Attorney Fees and Costs

Subject to Court approval, the Claims Administrator will pay 25 percent of the common fund, or $112,500, as attorney fees to Class Counsel.  (Settlement Agreement ¶ 38.1.)  This is less than the lodestar amount.  (Martínez Decl. ¶ 30.)  In addition, the Claims Administrator will pay Class Counsel's costs, not to exceed $8,900.  (Settlement Agreement ¶ 38.1.)

### 5.      Allocation of Net Settlement Fund

If the Court approves the above payments (the cost of notice and claims administration, payment to the LWDA, incentive payments to the Named Plaintiffs, and attorney fees and costs), then the Net Settlement Fund will be $242,600.   The Net Settlement Fund will be allocated between the FLSA and class claims.  (Settlement Agreement ¶ 39.1.)  Each member of the Settlement Class and the FLSA collective action will be entitled to a pro rata share of the settlement proceeds, based on his or her hourly rate and hours worked.  (Settlement Agreement ¶ 39.3; Martínez Decl. ¶ 21.)

A specific portion of the Net Settlement Fund will be allocated to FLSA overtime wages. (Settlement Agreement ¶ 39.3.)  Specifically, approximately $78,335, or thirty-two percent (32%), of the Net Settlement Fund will be allocated and distributed to the FLSA class only.  (Martínez Decl. ¶ 20.)

### 6.      Unclaimed Funds

If any portion of the common fund remains in the trust account after payment of the cost of notice and claims administration, payment to the LWDA, incentive payments to the Named Plaintiffs, attorney fees and costs, and payments to members of the class and collective action, then any residual funds will be paid to Centro de los Derechos del Migrante, Inc., a nonprofit organization, as *cy pres* recipient.  (Settlement Agreement ¶ 46.)  The exception is unclaimed FLSA wages, which will be redistributed among members of the collective action.  (*Id*. ¶ 39.3.)

### 7.    Release of Claims

Subject to Court approval, each class member who has not opted out within the exclusion period will release Defendants from any and all claims, whether known or unknown, from December 7, 2013 to May 3, 2019.  (Settlement Agreement ¶¶ 17, 19, 31.)  For all class members except the Named Plaintiffs, the release applies only to claims alleged in the Complaint based on the facts alleged therein.  (*Id*. ¶ 17; *compare id*. ¶ 32 (general release by Named Plaintiffs).)

If an individual does not opt in to the FLSA action, then his or her FLSA claim will not be released regardless of whether he or she is part of the Settlement Class.  (*Id*. ¶¶ 17, 39.4.)

### C.    Implementation Schedule

| Date | Event/Deadline |
|---|---|
| No later than five (5) days of the date of entry of this Order. | Defendants' counsel will provide the Claims Administrator and Class Counsel with the name and contact information for each member of the Settlement Class. |
| No later than fourteen (14) days from the date of this Order ("Notice Date"). | The Claims Administrator will mail to all Settlement Class members: (1) the Class Notice; (2) the Dispute Form; and (3) where applicable, the FLSA Notice and FLSA Consent to Join/Opt-In Form. |
| Sixty (60) days from Notice Date. | Deadline to mail FLSA Consent to Join/Opt-In Form. |
| Sixty (60) days from Notice Date. | Deadline to mail Dispute Form to dispute information listed on the form, on which the estimated California settlement payment and, if applicable, FLSA settlement payment are based. |
| Sixty (60) days from Notice Date. | Deadline to mail written objections. |
| Sixty (60) days from Notice Date. | Deadline to mail request for exclusion. |
| To be determined. | Final fairness hearing, and hearing on motion for award of attorney fees and costs and class representative incentive payments. |
| November 1, 2019 | Defendants will deposit $75,000 to the Qualified Settlement Fund ("QSF") established by the Claims Administrator. |
| The first day of every month beginning on December 1, 2019, for 25 months | Defendants will deposit $15,000 to the QSF established by the Claims Administrator. |
| Within thirty (30) days from receipt of the first payment (i.e., by December 1, 2019) | The Claims Administrator will (1) mail a check to the LWDA for the full PAGA payment of $7,500; (2) mail a check to Class Counsel for all attorneys' costs up to $8,900 (not fees); and (3) reimburse itself for the pro rata costs of claims administration. |
| Within thirty (30) days from receipt of the 12th monthly payment (i.e., by November 1, | The Claims Administrator will (1) mail to each Settlement Class member a check in the amount of his or her pro rata settlement share; and (2) reimburse itself for the pro rata costs of claims |

| 2020) | administration. |
|---|---|
| Within thirty (30) days from receipt of the 25th monthly payment (i.e., by December 1, 2021) | The Claims Administrator will (1) mail to each Settlement Class member a check for payment of the remaining Settlement Awards; (2) reimburse itself for the remaining pro rata costs of claims administration; (3) mail a check to the class representatives in the amount of incentive payments approved by the Court; and (4) mail a check to Class Counsel in the amount of attorney fees approved by the Court. |

The remaining deadlines are specified in the Implementation Schedule attached to the Settlement Agreement.  (Martínez Decl., Exh. 1D.)

## ARGUMENT

This motion involves the first stage of the three-stage process in reviewing a proposed class action settlement.  *Milburn*, 2019 WL 1746056, at *3.  Where, as here, the action is settled before class certification, the Court must determine whether class certification is proper and also conduct a preliminary fairness evaluation.  *Id.*  If the Court finds the class should be preliminarily certified and the settlement falls within the range of possible approval, the second stage is class notice. *Id.* The fairness hearing is the third stage, when the Court determines whether to approve the settlement, considering any objections and further developments.  *Id.*; *Richardson v. THD At-Home Servs., Inc.*, No. 1:14-CV-0273-BAM, 2016 WL 1366952, at *2 (E.D. Cal. Apr. 6, 2016).

Like the class claims, settlement of the FLSA claim requires Court approval.  *See generally Milburn*, 2019 WL 1746056, at *4.  The Court must determine whether to conditionally certify the collective action.  *Id*. at *8.  Then, the Court must consider whether the FLSA settlement is a fair and reasonable resolution of a bona fide dispute, and it considers the relevant Rule 23 factors.  *Id*. at *4-*5.

## I.    The Court Should Preliminarily Certify the Settlement Class

The Rule 23(a) prerequisites to class certification are:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).  In addition to meeting those prerequisites, one of the three requirements of

Rule 23(b) must be met.  *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122 (9th Cir. 2014).

The proposed Settlement Class meets these requirements and thus should be preliminarily certified.

### A.     The Rule 23(a) Prerequisites Are Met

#### 1.     The Proposed Class Satisfies the Numerosity Requirement

Numerosity is met if the class is "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1).  "Courts have found the requirement satisfied when the class comprises of as few as thirty-nine members, or where joining all class members would serve only to impose financial burdens and clog the court's docket."  *Milburn*, 2019 WL 1746056, at \*6.  Because there are more than 100 members in the proposed Settlement Class (Martínez Decl. ¶ 3), the numerosity requirement is satisfied.  *See Milburn*, 2019 WL 1746056, at \*6.

#### 2.     The Commonality Requirement Is Met

Commonality requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality exists when class members' claims "depend upon a common contention" that can be resolved in "one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). " 'What matters to class certification . . . is not the raising of common "questions"—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.' "  *Id.*  Just one common question will do. *Id.* at 359.

The commonality requirement is met where, as here, a defendant employs uniform policies or practices that allegedly violate wage and hour law.  *See, e.g., Milburn*, 2019 WL 1746056, at \*6- \*7; *Tapia v. Zale Delaware Inc.,* No. 13-CV-1565-BAS (PCL), 2016 WL 1385181, at \*2-\*9 (S.D. Cal. Apr. 6, 2016); *Palana v. Mission Bay Inc.*, No. 13-CV-05235-SI, 2015 WL 4110432, at \*3-\*4 (N.D. Cal. July 7, 2015).  All class members were treated identically under Defendants' uniform policies and practices with regard to overtime pay, and meal and rest periods.  Common legal and factual questions include:

- Whether Defendants failed to provide class members with required meal periods;
- Whether Defendants failed to provide class members with required rest periods;
- Whether class members are entitled to statutory premium pay for every day they missed a meal or rest period;

- Whether Defendants misclassified class members as agricultural workers;[3]
- Whether Defendants failed to provide class members with accurate itemized wage statements; and
- Whether Defendants failed to pay waiting time penalties to former employees for all of their wages due.

The answers to these and other legal and factual questions would resolve the claims of all class members in "one stroke." *Wal-Mart*, 564 U.S. at 350. Thus, the proposed Settlement Class satisfies the commonality requirement of Fed. R. Civ. P. 23(a)(2).

### 3.    The Typicality Requirement Is Met

Rule 23(a)(3)'s typicality requirement "serves to ensure that 'the interest of the named representative aligns with the interests of the class.' " *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (citation omitted).  This requirement is met if the claims of each class member arise from the same course of conduct and depend on similar legal arguments.  *Milburn*, 2019 WL 1746056, at *7 (citing *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)). The representative's claims need only be " 'reasonably coextensive' "—not identical—with class members' claims.  *Ruiz Torres*, 835 F.3d at 1141 (citation omitted).

Here, the Named Plaintiffs were employed in all four positions (shop worker, operator, truck driver, and weigher).  The Named Plaintiffs and the putative class members worked under the same terms and conditions, and have suffered similar injuries as a result of Defendants' common practices or policies.  (Martínez Decl. ¶¶ 10-14, 23; Cisneros Decl. ¶ 2; Cortez Decl. ¶¶ 2-3; Garcia Decl. ¶ 2; Gonzalez Decl. ¶ 3; Guzman Decl. ¶¶ 4, 7, 8; Raygoza Decl. ¶ 3; Rodriguez Decl. ¶ 2; Toscano Decl. ¶ 3.)  All employees were denied adequate meal and rest breaks under Defendants' common policies and practices.  All employees were classified as agricultural workers, and were denied overtime pay between 40 and 60 hours of work, which affects the derivative state law claims.  The claims of the Named Plaintiffs are thus "reasonably co-extensive" with those of the class members, and the typicality requirement is satisfied.

### 4.    Plaintiffs and Their Counsel Satisfy the Adequacy Requirement

Rule 23(a)(4) requires that the class representatives "will fairly and adequately protect the

---

[3]   Although Plaintiffs seek overtime only under the FLSA and not under state law, some of the state law claims are derivative of the FLSA claim (e.g., wage statement and waiting time penalties).

1   interests of the class."  The rule is satisfied where there are no conflicts of interest between the

2   representatives and putative class members, and the representatives and their counsel will

3   vigorously prosecute the litigation.  *Milburn*, 2019 WL 1746056, at *7 (quoting *In re Mego Fin.*

4   *Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000)).

5       There are no actual or potential conflicts between the Named Plaintiffs and putative class

6   members.  (Martínez Decl. ¶ 23.)  They share the same interests in seeking compensation for missed

7   meal and rest periods, the claims derivative of the unpaid overtime claim, and other identical forms

8   of relief for Defendants' alleged misconduct.  Their interests are representative of and consistent

9   with the interests of the proposed class, and their active participation throughout the litigation

10  demonstrates that they have and will continue to protect the interests of the proposed class. (*Id.*)

11      In addition, Plaintiffs' counsel will adequately represent the class and meet the requirements

12  for appointment as class counsel.  They have decades of experience in class action and other

13  complex litigation, and extensive expertise in wage and hour law.  (Martínez Decl. ¶¶ 26-28.)  They

14  have represented thousands of workers in lawsuits similar in size, scope, and complexity to the

15  present case, and have been appointed as class counsel in every case in which they have sought such

16  appointment.  (*Id.*)  They have thoroughly investigated and identified the claims and damages in this

17  case, have prosecuted the case vigorously, and have the ability, expertise, and resources to continue.

18  (*Id.* ¶¶ 16-17, 26-28.)  *See* Fed. R. Civ. P. 23(g)(1)(A) (listing factors to consider in appointing class

19  counsel); *see also, e.g.*, *Milburn*, 2019 WL 1746056, *7 (factor met where "counsel represents they

20  are experienced employment and class action litigators who are fully qualified to pursue the interests

21  of the class").

22      **B.    The Rule 23(b)(3) Requirements Are Met**

23      In addition to meeting the requirements of Rule 23(a), Plaintiffs must also meet one of the

24  three requirements of Rule 23(b).  *Baumann*, 747 F.3d at 1122.  Relevant here, Rule 23(b)(3)

25  requires that "the questions of law or fact common to class members predominate over any

26  questions affecting only individual members, and that a class action is superior to other available

27  methods for fairly and efficiently adjudicating the controversy."

28

1

### 1.   Common Questions Predominant over Individual Questions

In the predominance inquiry, the Court assesses whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  The Court makes "a global determination" of whether common questions predominate over individual ones.  *Ruiz Torres*, 835 F.3d at 1134.  "Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3)." *Milburn*, 2019 WL 1746056, *8.

Here, the operative facts involve Defendants' standardized conduct, which is uniformly applicable to the class as a whole.  The relevant law governing meal and rest period requirements, overtime requirements, and Plaintiffs' other claims are the same for all class members.  There are few individualized issues, other than the number of hours worked and rate of pay, as reflected in time records, and the calculation of damages.  Because the core issues of fact and law can be resolved for all proposed class members in a single action, the predominance requirement is met.

### 2.   Class Treatment Is Superior to Individual Treatment

In addition to predominance, Rule 23(b)(3) requires a finding that class resolution "is superior to other available methods for the fair and efficiently adjudicating the controversy."  A class action is the superior method of managing litigation when "no realistic alternative exists," or class litigation "will reduce litigation costs and promote greater efficiency . . . ." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996).  Both are true here.

The proposed class consists of a large number of low-wage workers, most of whom are seasonal workers and, based on their rate of pay and earnings, none has the means to finance an individual lawsuit.  (Martínez Decl. ¶ 22.)  Their claims are too small to justify the cost for private counsel to file and prosecute individual actions.  (*Id.*)  *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 527 (N.D. Cal. 2004).  Moreover, litigating more than one hundred separate actions based on the same company policies and practices would be inefficient and unnecessarily burden the judicial system.  The only reasonable method to resolve these claims is through a class proceeding. *See, e.g., Milburn*, 2019 WL 1746056, *8 (superiority requirement met where a class action was more

1   efficient and class members' claims were too small for individual treatment).

2         Similarly, the relevant factors listed in Rule 23(b)(3)(A)-(D) favor class litigation.  The first

3   is the interest of each class member in "individually controlling the prosecution or defense of

4   separate actions."  This factor weighs in favor of class certification where, as here, "damages

5   suffered by class members are not large. . . ."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180,

6   1190 (9th Cir. 2001).  Further, anyone who wishes to opt out can do so and commence her or his

7   own lawsuit.  The second factor concerns any other pending litigation involving this controversy.

8   Plaintiffs are not aware of any other lawsuits by any putative class member concerning the issues in

9   this case.  (Martínez Decl. ¶ 22.)  As to the third factor—"the desirability or undesirability of

10   concentrating the litigation of the claims in the particular forum"—putative class members have

11   worked for Defendants in Tulare, which makes the Eastern District of California a logical forum.[4]

12         In sum, the Rule 23(a) and (b)(3) requirements are met, and thus the Court should

13   conditionally certify the Settlement Class and provisionally appoint Plaintiffs' counsel as Class

14   Counsel.

15   **II.     The Court Should Conditionally Certify the Collective Action Under the FLSA**

16         To obtain conditional certification of a collective action under the FLSA, Plaintiffs need

17   only show that they are "similarly situated" to the subclass members.  29 U.S.C. § 216(b).  Courts

18   use "a very lenient standard which typically results in conditional certification of the class."

19   *Talavera v. Sun Maid Growers of Cal.*, No. 1:15-cv-00842-AWI-SAB, 2015 WL 7187960, at *2

20   (E.D. Cal. Nov. 16, 2015) (citation omitted); *see also Milburn*, 2019 WL 1746056, at *8.

21         The lenient standard is met here because all workers within each group alleging a FLSA

22   violation (shop workers, truck drivers, and weighers) have similar job duties, and are all classified

23   as agricultural workers exempt from overtime pay.  (Cisneros Decl. ¶ 2; Cortez Decl. ¶¶ 2-3; Garcia

24   Decl. ¶ 2**;** Gonzalez Decl. ¶¶ 2-3; Guzman Decl. ¶¶ 2-3; Raygoza Decl. ¶¶ 2-3; Rodriguez Decl. ¶ 2;

25   Toscano Decl. ¶¶ 2-3; Martínez Decl. ¶¶ 10, 12.)  *See Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d

---

[4]  The final factor—"the likely difficulties in managing a class action"—is not relevant for a settlement-only class, because there will be no trial if the settlement is approved.  *Amchem*, 521 U.S. at 620.

1124, 1128 (N.D. Cal. 2009) (standard met where "workers share a job description, were uniformly classified as exempt from overtime pay by Defendant[s] and perform similar job duties"). Accordingly, conditional certification of a collective action is warranted.

### III.    The Proposed Settlement Meets the Requirements for Preliminary Approval

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998).   The Court, however, must approve class settlements to protect absent class members from unfair or unjust settlements.   *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).   Rule 23(e) requires that a settlement be " 'fundamentally fair, adequate, and reasonable.' "  *Staton*, 327 F.3d at 959 (citation omitted).

In determining whether to grant preliminary approval of a class action settlement, this Court considers whether the settlement is procedurally and substantively fair.  *Milburn*, 2019 WL 1746056, at *8. Preliminary approval is warranted if: "(i) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class." *Id.*

The Ninth Circuit has not yet established the standard for determining whether to approve a FLSA settlement, but "district courts in this circuit have frequently applied a widely-used standard adopted by the Eleventh Circuit, which looks to whether the settlement is a fair and reasonable resolution of a bona fide dispute." *Milburn*, 2019 WL 1746056, at *4 (collecting cases).  If there is a bona fide dispute about the defendant's liability under the FLSA, the Court should consider the relevant Rule 23 factors to determine whether to approve the FLSA settlement.  *Id.*; *see also, e.g., Lewis v. Vision Value, LLC*, No. 1:11-CV-01055-LJO-BAM, 2012 WL 2930867, at *2 (E.D. Cal. July 18, 2012) (same).

Plaintiffs thus first address the bona fide dispute prerequisite for approval of the FLSA collective action settlement, and then the Rule 23 factors, which the Court reviews to determine whether to preliminarily approve both the class and FLSA collective action settlement.

**A.      A Bona Fide Dispute Exists for the FLSA Claim**

The parties extensively briefed the application of the FLSA agricultural exemption before the mediator.  This brief contains a short discussion showing that there a bona fide dispute as to whether this affirmative defense applies to shop workers, truck drivers, and weighers.  Plaintiffs do not allege that operators were misclassified.

The definition of "agriculture" for purposes of the FLSA overtime exemption has two parts: (1) the "primary meaning," which includes "farming in all its branches," such as cultivation and tillage of soil, and dairying; and (2) the "secondary meaning," which includes "any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidently to or in conjunction with 'such' farming operations." *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762-63 (1949) (citing 29 U.S.C. § 203(f)).   The parties are not aware of any cases resolving whether the agricultural exemption applies under the circumstances.

Defendants' position is that the shop workers are exempt because they repair machines used in harvesting operations.  Plaintiffs disagree, arguing that shop workers are not exempt because they are not engaged in primary farming (i.e., they are not engaged in harvesting activities), and they are not engaged in secondary farming because they work for an independent business at its shop.  *See, e.g.*, 29 C.F.R. §780.129 ("No matter how closely related it may be to farming operations, a practice performed neither by a farmer nor on a farm is not within the scope of the 'secondary' meaning of 'agriculture.' ").

Defendants contend the truck drivers are engaged in secondary farming, because they are involved in the harvesting operation by receiving cut grain from the fields and delivering the grain to the dairy farms.  Plaintiffs' position is that the truck drivers are not engaged in secondary farming, because they haul the grain off the fields where it is harvested and they are not employed by farmers.  *E.g.,* 29 C.F.R. § 780.118(b) (" '[H]arvesting' never extends to transportation or other operations off the farm.  Off-the-farm transportation can only be 'agriculture' when performed by the farmer as an incident to his farming operations."); *NLRB v. Olaa Sugar Co.*, 242 F.2d 714, 718 (9th Cir. 1957).

1 Finally, Defendants argue that the weighers' weighing of grain falls within the definition of

2 "preparation for market" under the secondary meanings of agriculture.  Plaintiffs disagree for

3 several reasons, including that the grain is transported off the fields before it is weighed.  *See* 29

4 C.F.R. § 780.118(b) (quoted in prior paragraph).  Further, clerical, administrative and non-farm staff

5 are not exempt.  *See Farmers Reservoir*, 337 U.S. at 769-70 (bookkeeper for independent company

6 that provided irrigation water to farmers did not fall within the agricultural exemption).

7 Accordingly, there is a bona fide dispute about Defendants' liability under the FLSA.

8 **B. The Settlement Process Was Procedurally Fair**

9 "The court must consider whether the process by which the parties arrived at their settlement

10 is truly the product of arm's length bargaining, rather than collusion or fraud."  *Milburn*, 2019 WL

11 1746056, at *9.  A settlement is presumed to be fair if there is adequate discovery and genuine

12 arm's-length bargaining.  *Id.* (citing cases); *Acosta*, 2018 WL 646691, at *8 (same); *see also, e.g.,*

13 *Harris v. Vector Mktg. Corp.*, No. 08–5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011)

14 (settlement negotiated after parties engaged in discovery and with the assistance of an experienced

15 private mediator indicated settlement was procedurally sound and non-collusive).

16 The proposed Settlement Agreement here is the product of arm's-length negotiations.  The

17 parties engaged in two separate mediations one year apart with highly experienced mediators.

18 (Martínez Decl. ¶ 15.)  Prior to the mediations, the parties engaged in substantial discovery, both

19 formal and informal.  (*Id.* ¶ 16.)  Defendants provided Plaintiffs with time and payroll records for

20 the entire class, and Plaintiffs used this data to calculate damages and penalties.  (*Id.* ¶ 16.)

21 Plaintiffs' counsel also performed extensive legal research and factual analysis to reach an informed

22 understanding of the claims and the potential defenses, and of the strengths and weakness both for

23 class certification and on the merits, including by speaking to many class members.  (*Id.* ¶ 17.)

24 The parties ultimately reached settlement through a mediator's proposal after the second

25 mediation.   (Martínez Decl. ¶ 15.)  After the mediator's proposal, the parties reached a written

26 memorandum of understanding memorializing the key terms of the proposed settlement, and then

27 continued to work together to formalize the proposed Settlement Agreement.  (*Id.*)

28

The proposed Settlement Agreement was thus the result of serious, informed, non-collusive negotiations. *See*, *e.g.*, *Milburn*, 2019 WL 1746056, at *9 (factor met where parties attended mediation with a professional mediator; parties exchanged information regarding the damages exposure and the strengths and weakness of plaintiff's claims, both on the merits and for class certification; and plaintiff's counsel thoroughly investigated the merits, including engaging in formal and informal discovery, and interviewing many class members); *Acosta*, 2018 WL 646691, at *8 (factor met where, prior to mediation, defendants provided plaintiffs with data for class members, which plaintiffs used to calculate damages; the parties attended mediation with an experienced mediator; and after mediation the parties continued to work together to formulate the settlement agreement); *Ruch v. AM Retail Grp., Inc.*, No. 14–CV–05352–MEJ, 2016 WL 1161453, at *11 (N.D. Cal. Mar. 24, 2016) (factor met where parties engaged in pre-mediation exchange of information, participated in formal mediation which resulted in a written memorandum of understanding memorializing the key terms of the proposed settlement, and spent several weeks negotiating the long form settlement agreement).

### C.      The Settlement Agreement Is Substantively Fair

#### 1.      The Settlement Amount Is Adequate

In determining whether the Settlement is substantively fair, the Court compares the value of the settlement with the maximum potential recovery. *Milburn*, 2019 WL 1746056, *9; *Nen Thio*, 14 F. Supp. 3d at 1335.  A settlement that represents only a fraction of the maximum potential recovery is not per se unreasonable. *E.g.*, *Milburn*, 2019 WL 1746056, *9 (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459).

The Settlement will provide substantial cash payments to all class members, depending on each class member's days and hours worked, and hourly rate of pay.  (Martínez Decl. ¶¶ 7, 21; Settlement Agreement ¶ 39.3.)  The average award is estimated to be $2,186.  (Martínez Decl. ¶ 21.)  The estimated maximum payment will be approximately $10,866 and the lowest payment will be approximately $4.  (*Id*.)

The settlement fund is allocated between the class and the FLSA claims, with 68 percent allocated to the class claims and 32 percent to the FLSA claim.  (Martínez Decl. ¶ 20.)  *See Milburn*, 2019 WL 1746056, at *10 (granting preliminary approval of settlement that allocated separate funds for the FLSA class and the Rule 23 class).

The $450,000 payment represents approximately 67 percent of the estimated maximum potential damages for the primary claims of the class (overtime wages, and meal and rest break premiums).  (Martínez Decl. ¶ 19.)  In other words, the Settlement fund is expected to compensate members of the class and collective action for a major percentage of the alleged damages.  If the maximum non-PAGA statutory penalties are included ($377,475 in waiting time penalties and $170,000 in paystub violations), then the recovery rate is approximately 37 percent.  (*Id*.)  With PAGA penalties (of approximately $204,000, and not including PAGA paystub penalties), the recovery rate is approximately 31 percent if the PAGA penalties are unstacked, and 30 the PAGA penalties are stacked.[5]  (*Id*.)

It is reasonable to discount the maximum recovery in order to settle the action now and avoid the risks, uncertainties, and substantial delays in continued litigation.  First, as discussed above, the parties dispute whether the employees are covered by the agricultural exemption, and they are not aware of any cases resolving whether the agricultural exemption applies under the circumstances.  Second, while Plaintiffs contend that employees were not provided with meal and rest periods, Defendants dispute the allegation, and argue that employees were provided with meal and rest periods but chose not to take them.  This dispute raises issues both for class certification and on the merits.  Third, there were real concerns about the possibility of Defendants filing for bankruptcy.

Finally, the settlement is structured for installment payments.  Plaintiffs' counsel determined that this payment plan maximizes the recoverable amount while preventing Defendants from filing bankruptcy.  (Martínez Decl. ¶ 9.)  Counsel relied on the opinion of a neutral and independent CPA

---

[5]   "Stacked" PAGA penalties are when all potential PAGA penalties are calculated for each Labor Code violation alleged.  *Schiller v. David's Bridal, Inc*., No. 1:10-CV-00616 AWI, 2010 WL 2793650, at *6 (E.D. Cal. July 14, 2010).

who reviewed Defendants' financial status, including financial statements, ledgers, and tax returns. (*Id.*; *see also* Declaration of Michael P. Murray, CPA Regarding Review of Defendants' Financial Records, filed with this Motion.)  The CPA determined that Defendants would not be able to pay $450,000 all at once or over a shorter period than the payment schedule.

Accordingly, the Court should preliminarily approve the Settlement amount and structure.

### 2.    The Attorney Fees and Costs Are Reasonable

At final approval, Class Counsel will seek attorney fees equal to 25 percent of the common fund ($112,500).  This is the benchmark for a reasonable fee award in this Circuit.  *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

The Settlement Agreement provides that Defendant will not contest the fee application, but this is not an improper " 'clear sailing' " agreement under *Bluetooth*, 654 F.3d at 947.  "The Ninth Circuit has distinguished between clear-sailing provisions in settlements where the attorneys' fees are to come out of the settlement fund versus being paid by defendants in addition to the settlement fund."  *Arredondo v. Delano Farms Co.*, No. 1:09-CV-01247-MJS, 2017 WL 4340207, at *4 (E.D. Cal. Sept. 29, 2017) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009)). There is no indication of collusion or any other concern when fees are linked to the common fund as a percentage of the fund, because Class Counsel's interests are aligned with those of the class in maximizing the total recovery.  *See id.*; *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14-CV-01788-JST, 2016 WL 344532, at *7 (N.D. Cal. Jan. 28, 2016) ("[A] 'clear sailing provision does not signal the possibility of collusion where, as here, Class Counsel's fee will be awarded by the Court from the same common fund as the recovery to the class.' " (citations omitted)); *Pointer v. Bank of Am., N.A.*, No. 2:14–CV–00525–KJM–CKD, 2016 WL 7404759, at *13 (E.D. Cal. Dec. 21, 2016) ("Although defendant agreed not to oppose class counsel's request for attorney's fees, those fees will come from the settlement fund, so defendants' agreement does not raise a substantial concern here.").

1   This Court will likely cross check the requested amount with the lodestar amount at the final

2   approval stage. *Milburn,* 2019 WL 1746056, at *11.  Plaintiffs note that the $112,500 in fees that

3   counsel will seek is less than the lodestar amount. (Martínez Decl. ¶ 30.)

4   At final approval, Class Counsel will seek no more than $8,900 in actual litigation costs.

5   (Settlement Agreement ¶ 38.1.)

6   ### 3.   The Incentive Payment Is Reasonable

7   Under the proposed Settlement Agreement and subject to Court approval, each Named

8   Plaintiffs will be awarded an incentive payment of $7,500 for his or her work on behalf of the class.

9   (Settlement Agreement ¶ 38.2.)  Plaintiffs seek preliminary approval of the awards as reasonable.

10  Incentive payments, while discretionary, " 'are fairly typical in class action cases.' " *In re

11  Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 943 (9th Cir. 2015) (quoting *Rodriguez*, 563 F.3d

12  at 958; *Milburn,* 2019 WL 1746056, at *11.  Such awards are intended to compensate class

13  representatives for their work on behalf of the class, for financial or reputational risk in bringing the

14  lawsuit, and sometimes for their willingness to act as a private attorney general. *Milburn,* 2019 WL

15  1746056, at *11 (citing *Rodriguez*, 563 F.3d at 958–59).   While a settlement may not grant

16  preferential treatment to class representatives or any class member, incentive payments do not

17  constitute preferential treatment. *Acosta*, 2018 WL 646691, at *8.

18  Here, the Named Plaintiffs have expended significant time and energy on this matter,

19  including participating in numerous strategy meetings, assisting Plaintiffs' counsel in investigating

20  the case, speaking with many other workers about the case, and taking uncompensated time off

21  work to attend the two mediations.  (Cisneros Decl. ¶¶ 3, 6, 7; Cortez Decl. ¶¶ 4, 5, 7, 8; Garcia

22  Decl. ¶¶ 3, 6-8; Gonzalez Decl. ¶¶ 4, 5, 7, 8; Guzman Decl. ¶¶ 4, 7, 8; Raygoza Decl. ¶¶ 4, 5, 7, 8;

23  Rodriguez Decl. ¶¶ 3, 6, 7; Toscano Decl. ¶¶ 4, 5, 7, 8; Martínez Decl. ¶ 24.)  They have spent close

24  to or more than 60 hours working on the case. (Cisneros Decl. ¶ 7; Cortez Decl. ¶ 8; Garcia Decl.

25  ¶ 8; Gonzalez Decl. ¶ 8; Guzman Decl. ¶ 8; Raygoza Decl. ¶ 8; Rodriguez Decl. ¶ 7; Toscano Decl.

26  ¶ 8.)

27

28

Further, the Named Plaintiffs have faced risks serving as class representatives, including fear of retaliation by Defendants and being blacklisted from future jobs, lack of support from other employees, and liability for costs if Defendants prevailed.  (Cisneros Decl. ¶ 5; Cortez Decl. ¶ 6; Garcia Decl. ¶ 5; Gonzalez Decl. ¶ 6; Guzman Decl. ¶ 6; Raygoza Decl. ¶ 6; Rodriguez Decl. ¶ 5; Toscano Decl. ¶ 6; Martínez Decl. ¶ 25.)

They also agreed to a broad release of claims under the Settlement Agreement, including a waiver of rights under California Civil Code § 1542.  (Settlement Agreement ¶ 32; Cisneros Decl. ¶ 8; Cortez Decl. ¶ 9; Garcia Decl. ¶ 9; Gonzalez Decl. ¶ 9; Guzman Decl. ¶ 9; Raygoza Decl. ¶ 9; Rodriguez Decl. ¶ 9; Toscano Decl. ¶ 9.)

An incentive payment of $5,000 is "presumptive reasonable."  *Taylor v. FedEx Freight, Inc*., No. 1:13-CV-01137-DAD-BAM, 2016 WL 6038949, at *8 (E.D. Cal. Oct. 13, 2016).  But courts routinely approve higher awards where, as here, the Named Plaintiffs actively participate in the litigation, face risks serving as class representatives, and enter broad releases of claims.  *E.g., Singh v. Roadrunner Intermodal Servs., LLC*, No. 1:15–cv–01497–DAD–BAM, 2019 WL 316814, at *11 (E.D. Cal. Jan. 24, 2019) (approving $7,500 incentive payments); *Aguilar v. Wawona Frozen Foods,* No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) ($7,500); *Garnett v. ADT, LLC,* No. CV 2:14-02851 WBS AC, 2016 WL 3538354, at *6 (E.D. Cal. June 28, 2016) ($7,500); *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) ($8,000); *see also, e.g., Nelson v. Avon Prod., Inc*., No. 13-CV-02276-BLF, 2017 WL 733145, at *7 (N.D. Cal. Feb. 24, 2017) (approving $10,000 incentive payment, and explaining that "[c]ourts in this Circuit routinely grant requests for an award over $5,000 where the particular circumstances warrant such an award").

The $7,500 incentive payments are also reasonable when compared to the average class recovery of $2,186.  *See, e.g., Aguilar*, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (approving $7,500 incentive payments where average class recovery was approximately $500); *Garnett*, 2016 WL 3538354, at *6 (approving $7,500 incentive payment where average class recovery was less than $1,500).

1    Accordingly, the Court should preliminarily approve the incentive payments of $7,500 to

2    each Named Plaintiff for serving as a class representative.

3

4            **4.      The Narrow Release of Class and FLSA Claims**

5    In evaluating preliminary approval, this Court considers whether the "release appropriately

6    tracks the claims at issue in this case." *Milburn,* 2019 WL 1746056, at *12; *see also Ruch*, 2016

7    WL 1161453, at *11.  The "Released Claims" are limited to all claims, whether known or unknown,

8    during the Relevant Time Period (December 7, 2013 to May 3, 2019), and that were alleged in the

9    Complaint based on the facts alleged in the Complaint.  (Settlement Agreement ¶¶ 17, 19.)

10   All Settlement Class members who do not opt out will be deemed to have released

11   Defendants from the Released Claims.  (*Id*. ¶ 31 ("[O]n the Effective Date, each member of the

12   Settlement Class shall be deemed to have jointly and severally released and forever discharged

13   Defendants from any and Released Claims."); *cf. id*. ¶ 17 ("If a person opt-outs of the Class after

14   receiving the Class Notice, his or her California claims will not be released and will not barred by

15   res judicata in any future legal proceedings").)

16   If an individual does not opt in to the FLSA action, then his or her FLSA claim will not be

17   released regardless of whether he or she is part of the Settlement Class.  (Settlement Agreement

18   ¶ 39.4 ("Only workers who consent to join/opt-in to the FLSA action will be releasing their FLSA

19   claims.  If a person does not submit a consent to join/opt-in to the FLSA action, that person's FLSA

20   claim will not be released, regardless of whether he or she is part of the Class Settlement."); *id*. ¶ 17

21   (last sentence).)  This is consistent with the FLSA, which limits participation to individuals who opt

22   in to the action.  *Milburn,* 2019 WL 1746056, at *12.

23   As noted, the Named Plaintiffs signed a broader release, including a waiver of rights under

24   California Civil Code § 1542.  (Settlement Agreement ¶ 32.)  *See*, *e.g., Singh v. Roadrunner*

25   *Intermodal Servs., LLC*, No. 1:15–cv–01497–DAD–BAM, 2018 WL 2412325, at *6 (E.D. Cal. May

26   29, 2018) (same), *modified on other grounds*, 2018 WL 4382202 (E.D. Cal. Sept. 13, 2018), and

27   *final approval granted*, 2019 WL 316814.

28

## IV.     Notice

### A.     The Proposed Method and Form of Class Notice Is Fair and Adequate

For Rule 23(b)(3) classes, including settlement classes, the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e)(1)(B) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal . . . .").

That requirement is met here.  Within five days of preliminary approval (assuming approval), Defendants' counsel will provide the Claims Administrator and Class Counsel with a list of names and last known contact information for each member of the Settlement Class.  (Settlement Agreement ¶ 49.3(a); Exh. 1D, Implementation Schedule.)  Within 14 days, the Claims Administrator will send by first class mail the Class Notice and Dispute Form, in Spanish and English, to each class member's most recent address.  (*Id*. ¶ 49.3(a)-(b) & Exh. 1D.)  (The FLSA Notice is address in the next section.)  For each envelope returned as undeliverable within 45 days, the Claims Administrator will make prompt and reasonable efforts to locate a correct address and re-mail the documents to any new addresses obtained.  (*Id*. ¶ 49.3(b).)  *See Milburn*, 2019 WL 1746056, at *13 (finding similar notice process complied with Rule 23).

The contents of the proposed Class Notice also comply with Rule 23.  (Martínez Decl., Exh. 1A, Class Notice.)  As required, the Class Notice "clearly and concisely state[s] in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).  (Class Notice, ¶¶ 2-4, 7, 9, 16.)

The proposed Class Notice also provides additional information, including (1) the option to do nothing to receive a settlement payment, to dispute the information  on which the settlement

payment is based, and/or to object to the settlement; (2) the deadlines to mail an objection and the Dispute Form; (3) the approximate timeline for receiving settlement check; and (4) the deductions from the settlement fund, including for the incentive payments for the class representatives, and attorney fees and costs. (Class Notice ¶¶ 1, 5-8, 11 & Exh. 1B (Dispute Form).)

**B.     The FLSA Notice Is Proper**

"[F]or proposed settlements under the FLSA, 'the court must provide potential plaintiffs 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether or not to participate.' " *Milburn*, 2019 WL 1746056, at *13 (citations omitted).

Plaintiffs propose a FLSA Notice separate from the Class Notice. (Martínez Decl., Exh. 1A.)   Based on prior experience Plaintiffs' counsel believe it is clearer to provide separate notices. (Martínez Decl. ¶ 5.)  First, some individuals have no FLSA claim (the operators), so they might be confused by receiving a notice discussing the FLSA claim.  Second, separate notices makes it easier to emphasize the difference between class and FLSA collective actions (primarily, the opt-in requirement for FLSA actions).   The proposed members of the FLSA collective action will also receive a FLSA Consent to Join/Opt-in Form.  (Martínez Decl., Exh. 1C.)  All class and FLSA documents will be sent in one envelope.  (Martínez Decl. ¶ 5.)

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement Agreement; preliminarily certify the Settlement Class and conditionally certify the collective action under the FLSA; appoint Plaintiffs' counsel as Class Counsel and appoint the Named Plaintiffs as class representatives; approve the proposed Class Notice, FLSA Notice, FLSA Consent to Join/Opt-in Form, Dispute Form, and Implementation Schedule; approve CPT Group Class Action Administrators as the Claims Administrator; and schedule a final fairness hearing.

Dated: July 29, 2019                              Respectfully submitted,

LAW OFFICES OF JOHN E. HILL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: */s/  Enrique Martinez*
Enrique Martínez
*Attorneys for Plaintiffs & Putative Class*