UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARIO CORTEZ, MARIA CISNEROS, ANTONIO TOSCANO, FRANCISCO JAVIER GONZALEZ, JESUS RODRIGUEZ, CECILIA GARCIA, JOSE LUIS RAYGOZA, and JOSE GUZMAN, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

VIEIRA CUSTOM CHOPPING, INC., a California Corporation; V & S COMMODITY, INC., a California Corporation; CHRISTINA VIEIRA; and MATTHEW SEPEDA,

Defendants.

No. 1:17-cv-01647-DAD-SKO

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND COLLECTIVE ACTION SETTLEMENT

(Doc. No. 23)

This matter came before the court on September 17, 2019, for hearing on plaintiffs'

unopposed motion for preliminary approval of a class action and collective action settlement.

(Doc. No. 23.) Attorney Enrique Martínez appeared telephonically on behalf of plaintiffs, and

attorney Steven Wainess appeared telephonically on behalf of defendants. For the reasons set

forth below, plaintiffs' motion will be granted.

/////

/////

1

BACKGROUND

**BACKGROUND**

Defendants Vieira Custom Chopping, Inc., V & S Commodity, Inc., Christina Vieira, and Matthew Sepeda (collectively "defendants") provide commercial services to dairy farms. (Doc. No. 23-1 at 3.) Defendants employed Mario Cortez, Maria Cisneros, Antonio Toscano, Francisco Javier Gonzalez, Jesus Rodriguez, Cecilia Garcia, Jose Luis Raygoza, and Jose Guzman (collectively "plaintiffs") in their shop in Tulare and other areas of the Central Valley of California. (*Id.*) Defendants employ four groups of employees: shop workers, farm equipment operators, truck drivers, and weighers. (*Id.*) Defendants classified all employees as exempt "agricultural" employees under state and federal law, necessitating overtime compensation only when employees worked 10 hours per day or 60 hours per week. (*Id.* at 3–4.)

Plaintiffs worked for defendants in different positions for varying lengths of time. (*Id.* at 3.) During the corn and wheat season, plaintiffs were required to work over 12 hours per day for at least 6 days per week. (*Id.*) Plaintiffs allege that because the duties of shop workers, truck drivers, and weighers did not fall within the Fair Labor Standards Act (FLSA) agricultural exemption, they were misclassified as agricultural employees and are therefore entitled to overtime compensation. (*Id.* at 3–4.) Plaintiffs further allege that all employees are owed meal and rest period premiums because they were provided either insufficient amounts of meal periods or late meal periods. (*Id.* at 4.) Plaintiffs also allege that operators, truck drivers, and weighers were not provided enough rest periods. (*Id.* at 4–5.) Defendants maintain that plaintiffs were provided legally sufficient meal and rest periods but chose not to take them. (*Id.* at 4–5.)

On December 7, 2017, plaintiffs filed this class and collective action alleging the following causes of action: (1) violation of the FLSA, 29 U.S.C. § 201 et seq.; (2) failure to provide meal and rest periods, in violation of California Labor Code §§ 226.7, 512, and California Industrial Welfare Commission (IWC) Wage Orders; (3) failure to provide accurate itemized wage statements, in violation of Labor Code § 226(e); (4) failure to pay all wages due upon termination, in violation of Labor Code §§ 201, 202, and 203; (5) violation of Business and Professions Code § 17200 et seq.; and (6) violations of the Private Attorneys General Act (PAGA), Labor Code § 2698 et seq. (*Id.* at 5.)

2

On May 30, 2018, the parties participated in an unsuccessful mediation before Justice Steven Vartabedian.  (*Id.*)  On May 3, 2019, the parties attended a second unsuccessful mediation before James M. Phillips.  (*Id.* at 5–6.)  Several weeks later, the parties reached an agreement through a mediator's proposal.  (*Id.* at 6.)

On July 30, 2019, plaintiffs filed the present unopposed motion for conditional certification and for preliminary approval of the class action and collective action settlement.  (*See id.*)  Pursuant to the settlement agreement, plaintiffs seek to certify a settlement class defined as follows:

> all persons who are or were employed in California by Defendants as non-exempt (i) shop workers, (ii) farm equipment operators, (iii) truck drivers, and (iv) weighers at any point during the Class Period [December 7, 2013 through May 3, 2019] and who do not properly and timely opt out of the Settlement Class by having requested exclusion.

(*Id.* at 6.)  In contrast to the class action, the FLSA collective excludes operators and the limitations period is December 7, 2014 through May 3, 2019.  (*Id.*)

Under the proposed settlement agreement, defendants would pay a maximum settlement amount of $450,000 in installments.  (*Id.*)  The agreement provides for the following allocation of that payment:  (i) up to $18,500 from the settlement amount to the claims administrator; (ii) $10,000 from the net settlement fund to the settlement of PAGA claims, 75 percent of which will be paid to the California Labor and Workforce Development Agency (LWDA) pursuant to PAGA; (iii) $7,500 to each named plaintiff as an incentive payment; (iv) 25 percent, or $112,500, to be paid to class counsel in attorney's fees; and (v) estimated litigation costs of up to $8,900.  (*Id.* 6–7.)  After these deductions, each member of the settlement class and the FLSA collective action will be entitled to a pro rata share of the settlement proceeds in installment payments.  (*Id.* at 7, 19.)  Thirty-two percent of the remaining amount, or $78,335, will be distributed to the FLSA class only.  (*Id.* at 7.)  Unclaimed FLSA wages will be redistributed among members of the collective action.  (*Id.*)  All further remaining unclaimed funds will be paid to Centro de los Derechos del Migrante, Inc., a nonprofit organization, as *cy pres* beneficiary.  (*Id.*)

/////

3

Plaintiffs seek an order from this court: (i) preliminarily approving the proposed settlement reached with defendants; (ii) preliminarily certifying the settlement class and appointing the named plaintiffs to represent the settlement class; (iii) conditionally certifying the collective action; (iv) approving the proposed method and form of notice to the members of the class and collective action, including the opt-in procedures for the collection action; (v) approving the implementation schedule; (vi) approving CPT Group Class Action Administrators as the claims administrator; and (vii) scheduling a final fairness hearing. (*Id.* at 1.)

## LEGAL STANDARDS

### A. Rule 23 Settlements

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." "Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks and citations omitted). To protect the rights of absent class members, Rule 23(e) requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Bluetooth*, 654 F.3d at 946. But when parties seek approval of a settlement agreement negotiated before formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Bluetooth*, 654 F.3d at 946. Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than what is normally required under the Federal Rules. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

Review of a proposed class action settlement ordinarily proceeds in three stages. *See* MANUAL FOR COMPLEX LITIGATION (4th) § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. *Id.* (noting that if the parties move for both class certification and preliminary approval, the certification hearing and

4

preliminary fairness evaluation can usually be combined). Second, if the court makes a

preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms,

the parties are directed to prepare the notice of certification and proposed settlement to the class

members. *Id.* Third, the court holds a final fairness hearing to determine whether to approve the

settlement. *Id.*; *see also Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1267

(9th Cir. 2010).

Though Rule 23 does not explicitly provide for such a procedure, federal courts generally

find preliminary approval of the settlement and notice to the proposed class appropriate if "the

proposed settlement appears to be the product of serious, informed, non-collusive negotiations,

has no obvious deficiencies, does not improperly grant preferential treatment to class

representatives or segments of the class, and falls within the range of possible approval."

*Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL 558675, at *5 (N.D. Cal.

Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal.

2007)); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2011); *Dearaujo v. Regis Corp.*,

Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473 (E.D. Cal. June 30,

2016) ("Rule 23 provides no guidance, and actually foresees no procedure, but federal courts

have generally adopted [the process of preliminarily certifying a settlement class]."). "The court

need not 'reach any ultimate conclusions on the contested issues of fact and law which underlie

the merits of the dispute.'" *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992)

(quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th

Cir. 1982)). Rather, the court should weigh, among other factors, the strength of a plaintiff's

case; the risk, expense, complexity, and likely duration of further litigation; the extent of

discovery completed; and the value of the settlement offer. *Id.*

## B. FLSA Settlements

Under the FLSA, an employee may file a civil action against an employer that fails to

adhere to the FLSA's guarantees. 29 U.S.C. § 216(b); *see also Genesis Healthcare Corp. v.

Symczyk*, 569 U.S. 66, 69 (2013) ("The FLSA establishes federal minimum-wage, maximum-

hour, and overtime guarantees that cannot be modified by contract."). Employees may bring

collective actions under the FLSA, representing all "similarly situated" employees, but "each employee [must] opt-in to the suit by filing a consent to sue with the district court." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000); *see also Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014). Because an employee cannot waive claims under the FLSA, the claims may not be settled without supervision of either the Secretary of Labor or a district court. *See Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Beidleman v. City of Modesto*, No. 1:16–cv–01100–DAD–SKO, 2018 WL 1305713, at *1 (E.D. Cal. Mar. 13, 2018); *Yue Zhou v. Wang's Rest.*, No. 05–cv–0279 PVT, 2007 WL 2298046, at *1 n.1 (N.D. Cal. Aug. 8, 2007). The decision to certify an FLSA collective action is within the discretion of the district court. *See Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 989 (C.D. Cal. 2006).

The Ninth Circuit has not established criteria for district courts to determine whether an FLSA settlement should be approved. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-cv-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). Rather, district courts in this circuit routinely apply the Eleventh Circuit standard, which looks to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Milburn v. PetSmart, Inc.*, No. 1:18-cv-00535-DAD-SKO, 2019 WL 1746056, at *4 (E.D. Cal. Apr. 18, 2019); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014). "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and citations omitted). A court will not approve a settlement when there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because doing so would shield employers from the full cost of complying with the statute. *Id.*

If a bona fide dispute exists, "[c]ourts often apply the Rule 23 factors in evaluating the fairness of an FLSA settlement, while recognizing that some do not apply because of the inherent differences between class actions and FLSA actions." *Khanna v. Inter-Con Sec. Sys., Inc.*, No.

/////

civ S-09-2214 KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013) (internal quotation marks and citations omitted).  The balancing factors include

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-cv-2214 KJM EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014), *order corrected*, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015).

Below, the court will apply these standards in considering the proposed settlement.

# ANALYSIS

## A.    Preliminary Certification of Class related to California Law Violations

Plaintiffs seek preliminary certification of the proposed class under Rule 23 of the Federal Rules of Civil Procedure.

### 1.    Rule 23(a) Requirements

"Rule 23(a) establishes four prerequisites for class action litigation:  (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation."  *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).  The court will address each requirement below.

#### a.    *Numerosity*

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations."  *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).  Courts have found the requirement satisfied when the class comprises as few as thirty-nine members, or where joining all class members would serve only to impose financial burdens and clog the court's docket.  *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982) (discussing Ninth Circuit thresholds for numerosity), *vacated on other grounds*, 459 U.S. 810 (1982)); *In re Itel Sec. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981).

/////

Here, plaintiffs estimate that there are approximately 112 members in the settlement class. (Doc. No. 23-1 at 6.) This showing with respect to numerosity is adequate to meet the requirements of Rule 23(a)(1). *See Murillo*, 266 F.R.D. at 474.

b. *Commonality*

Rule 23(a) also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy the commonality requirement, the class representatives must demonstrate that common points of facts and law will drive or resolve the litigation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.") (internal citations omitted). "[C]ommonality is generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Franco v. Ruiz Food Prods., Inc.*, No. cv 10-02354 SKO, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)). The rule does not require all questions of law or fact to be common to every single class member. *See Hanlon*, 150 F.3d at 1019 (noting that commonality can be found through "[t]he existence of shared legal issues with divergent factual predicates"). However, the raising of merely any common question does not suffice. *See Dukes*, 564 U.S. at 349 ("[a]ny competently crafted class complaint literally raises common 'questions.'") (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–32 (2009)).

Here, plaintiffs argue that the alleged Labor Code violations are common to each member of the class. (Doc. No. 23-1 at 10.) Plaintiffs argue that the common legal questions include the following: (i) whether defendants failed to provide class members with required meal periods; (ii) whether defendants failed to provide class members with required rest periods; (iii) whether class members are entitled to statutory premium pay for every day they missed a meal or rest period; (iv) whether defendants misclassified class members as agricultural workers; (v) whether defendants failed to provide class members with accurate itemized wage statements; and (vi)

whether defendants failed to pay waiting time penalties to former employees for all of their wages due. (*Id.* at 10–11.) Because it appears that the same conduct which defendants allegedly engaged in "would form the basis of each of the plaintiff's claims," the court finds that commonality is satisfied. *Murillo*, 266 F.R.D. at 475 (citing *Acosta v. Equifax Info. Servs., L.L.C.*, 243 F.R.D. 377, 384 (C.D. Cal. 2007) (internal quotation marks omitted).

### c. *Typicality*

Rule 23(a)(3) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Armstrong*, 275 F.3d at 868. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868; *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). While representative claims must be "reasonably co-extensive with those of absent class members," they "need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, plaintiffs were employed in each of the four positions that comprise the putative class: shop workers, operators, truck drivers, and weighers. (Doc. No. 23-1 at 11.) Plaintiffs state that they and the putative class have worked under the same terms and conditions and suffered the same injuries as a result of defendants' common practices and policies. (*Id.*) The court concludes that plaintiffs' claims are reasonably co-extensive with those of the absent class members, and that typicality is therefore satisfied here.

### d. *Adequacy of Representation*

The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec.*

*Litig.*, 213 F.3d 454, 462 (9th Cir. 2000); *see also Pierce v. County of Orange*, 526 F.3d 1190, 1202 (9th Cir. 2008).

Here, plaintiffs' counsel states that there are no conflicts of interest between the proposed class representatives and any other class member. (Doc. No. 23-2 at ¶ 23.) Counsel states that the proposed representatives' interests are representative of and consistent with the interests of the proposed class. (*Id.*) Additionally, plaintiffs seek appointment of their current counsel, John Hill and Enrique Martínez, as class counsel. (Doc. No. 23-1 at 12.) Both attorneys have decades of experience in class action and other complex litigation, with extensive experience specifically in wage and hour law. (Doc. 23-2 at ¶¶ 26–28.) As such, the court finds that plaintiffs and plaintiffs' counsel satisfy the adequacy of representation requirement.

### 2. Rule 23(b)(3) Requirements

#### a. *Predominance*

First, common questions must "predominate" over any individual questions. While this requirement is like the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Dukes*, 564 U.S. at 359; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624–25 (1997); *Hanlon*, 150 F.3d at 1022 (9th Cir. 1998). While Rule 23(a)(2) can be satisfied by even a single question, Rule 23(b)(3) requires convincing proof that the common questions "predominate." *Amchem*, 521 U.S. at 623–24; *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

As discussed above, plaintiffs' complaint challenges defendants' employment policies related to overtime requirements and meal and rest period requirements. (Doc. No. 23-1 at 5.) Plaintiffs contend the relevant law is the same for all class members, and there are few individualized issues. (*Id.* at 13.) They allege that all class members were subject to the same policies and procedures during the class period. (*Id.*) Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3). *See Palacios v. Penny Newman Grain, Inc.*, No. 1:14-cv-01804-KJM, 2015 WL 4078135, at *5–6

(E.D. Cal. July 6, 2015); *Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. cv-10-3873-JST RZX, 2011 WL 320998, at \*7 (C.D. Cal. Jan. 27, 2011).  The court therefore concludes that the predominance requirement has been met in this case.

b. *Superiority*

Rule 23(b)(3) also requires a court to find "a class action is superior to other available methods for the fair adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  In resolving the Rule 23(b)(3) superiority inquiry, "the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating in one forum, and potential difficulties in managing the class action—although the last two considerations are not relevant in the settlement context."  *See Palacios*, 2015 WL 4078135, at \*6 (citing *Schiller v. David's Bridal Inc.*, No. 10-cv-0616-AWI-SKO, 2012 WL 2117001, at \*10 (E.D. Cal. June 11, 2012)).

Here, plaintiffs assert that the superiority requirement is satisfied because the proposed class consists of many low-wage workers, most of whom are seasonal workers who lack the means to finance individual lawsuits.  (Doc. No. 23-1 at 13.)  Absent class treatment, plaintiffs contend that the individual claims are too small to justify the cost for private counsel to file and prosecute individual actions.  (*Id.*)  Plaintiffs argue that litigating over one hundred separate actions based on the same company policies and practices would be inefficient and would unnecessarily burden the judicial system.  (*Id.*)  Plaintiffs know of no pending litigation involving this controversy.  (*Id.* at 14.)  Lastly, because the putative class members have all worked for defendants in Tulare, plaintiffs argue that the Eastern District of California is a desirable forum.  (*Id.*)  These reasons are persuasive, and warrant finding that the superiority requirement is satisfied here.

**B.  Conditional Certification of Collective Action under the FLSA**

As discussed above, plaintiffs seeking conditional certification of a collective action under the FLSA have the burden to show that they are "similarly situated" to other employee class members.  *See Litty v. Merrill Lynch & Co.*, No. cv 14-0425 PA (PJWX), 2015 WL 4698475, at \*6 (C.D. Cal. Apr. 27, 2015); *see also Lewis v. Wells Fargo Co.*, 669 F. Supp. 2d 1124, 1127

11

(N.D. Cal. 2009).  When determining whether to conditionally certify the collective action, plaintiffs can show they are "'similarly situated' by making substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy, or plan.'"  *Litty*, 2015 WL 4698475, at *6; *see also Lewis*, 669 F. Supp. 2d at 1127.  Courts apply a lenient standard when determining whether to conditionally certify a collective.  *See Syed v. M-I, L.L.C.*, No. 1:12-cv-01718-AWI-MJS, 2014 WL 6685966, at *2 (E.D. Cal. Nov. 26, 2014).  Here, the proposed FLSA collective comprises members of the shop workers, truck drivers, and weighers employee groups, which were treated identically under defendants' uniform policies and practices.  (Doc. No. 23-1 at 10.)  Members have similar job duties and are classified as agricultural workers exempt from overtime pay.  (*Id.* at 14.)  For all the reasons these groups satisfy the requirements for preliminary certification under Rule 23, the proposed FLSA collective also satisfies the FLSA's less stringent requirement that the members be "similarly situated."  Conditional certification of an FLSA collective is therefore appropriate.

### C. Preliminary Fairness Determination

Plaintiffs also seek preliminary approval of the proposed settlement.  Under Rule 23(e), a court may approve a class action settlement only if the settlement is a fair, reasonable, and adequate resolution of a bona fide dispute.  *Bluetooth*, 654 F.3d at 946.  "[P]reliminary approval of a settlement has both a procedural and substantive component."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (citing *Schwartz v. Dall. Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)).  In particular, preliminary approval of a settlement and notice to the proposed class is appropriate if:  (i) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class.  *Id.*; *see also Ross v. Bar None Enters., Inc.*, No. 2:13–cv–00234–KJM–KJN, 2014 WL 4109592, at *9 (E.D. Cal. Aug. 19, 2014).

In addition, plaintiffs allege here there is a bona fide dispute about defendants' liability under the FLSA with regards to the FLSA agricultural exemption to the shop workers, truck

drivers, and weighers.  (Doc. No. 23-1 at 16.)  The parties briefed the issues before their mediator, and they remain unaware of any cases resolving the issue of whether the agricultural exemption applies under the circumstances.  (*Id.*)  Because a bona fide dispute exists, the court will also evaluate the fairness of the proposed settlement of the FLSA claims.

        1.  <u>Procedural Fairness</u>

      The court must consider whether the process by which the parties arrived at their settlement is truly the product of arms-length bargaining, rather than collusion or fraud.  *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).  A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

      As noted above, the parties engaged in two separate mediations with experienced mediators.  (Doc. No. 23-2 at ¶ 15.)  Prior to the mediations, the parties engaged in substantial discovery, and defendants provided plaintiffs with time and payroll records that plaintiffs used to calculate damages and penalties.  (*Id.* at ¶ 16.)  Plaintiffs' counsel also represents that they conducted extensive legal research and factual analysis to understand the claims, potential defenses, and strengths and weaknesses for class certification and on the merits.  (*Id.* at ¶ 17.) Counsel contends that on several occasions he or his staff traveled to Tulare to meet with plaintiffs and class members to prepare the factual record.  (*Id.*)  After the second mediation, the parties reached settlement through a mediator's proposal.  (*Id.* at ¶ 15.)  The parties subsequently worked together to formalize the proposed settlement agreement.  (*Id.*)  In sum, plaintiffs' counsel asserts that the settlement was reached after extensive, good faith, arms-length negotiations.  (*Id.*) Based on these representations by counsel, it appears that the parties' negotiation constituted genuine, informed, arms-length bargaining.

/////

/////

/////

/////

2. <u>Substantive Fairness</u>

        a.     *Adequacy of the Settlement Amount*

      To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego*, 213 F.3d at 459. To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

      Here, the total proposed settlement is for $450,000 to a common fund for distribution to the class, payment of notice and claims administration costs, the payment of PAGA penalties to LWDA, incentive awards to the named plaintiffs, and attorneys' fees and costs. (Doc. No. 23-2 at ¶ 6.) The allocations to the FLSA and class claims will occur after all other distributions are made from the common fund. (*Id.* at ¶ 7.) Defendants have also agreed to separately cover the employers' share of payroll taxes on the amounts paid as wages. (*Id.* at ¶ 6.) Plaintiffs estimate that the maximum potential damages for the primary class claims is approximately $667,800, making the total settlement fund of $450,000 a 67 percent recovery of the plaintiffs' primary claims.[1] (*Id.* at ¶ 19.) If the maximum non-PAGA statutory penalties are included, the recovery rate is approximately 37 percent.[2] (*Id.*) After accounting for PAGA penalties, the recovery rate is approximately 31 percent if the penalties are unstacked, and 30 percent if the penalties are stacked.[3] (*Id.*) This settlement amount is similar to percentage recoveries California district

---

[1] This assumes 100 percent recovery and accounts for overtime wages ($220,100), meal period premiums ($202,870), and rest break premiums ($244,830). (Doc. 23-2 at ¶ 19.)

[2] The maximum non-PAGA statutory penalties include $377,475 in waiting time penalties and $170,000 in paystub violations. (Doc. 23-1 at 19.)

[3] When PAGA penalties are "stacked," the court aggregates all potential PAGA penalties for each cause of action. *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616 AWI, 2010 WL 2793650, at *6 (E.D. Cal. July 14, 2010).

courts have found to be reasonable for this purpose. *See, e.g.*, *Villegas v. J.P. Morgan Chase & Co.*, No. 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (settlement of approximately 15 percent found to be preliminarily fair); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (settlement of approximately 25 to 35 percent was reasonable).

The proposed settlement agreement also allocates approximately 32 percent of the net settlement fund to the FLSA collective action plaintiffs only, leaving 68 percent allocated to the class claims. (Doc. No. 23-2 at ¶ 20.) The court finds this aspect of the proposed settlement to be a fair and reasonable resolution of a bona fide dispute under the FLSA. *See Thompson v. Costco Wholesale Corp.*, No. 14-cv-2778-CAB-WVG, 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017) ("[C]ourts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims."); *see also Millan*, 310 F.R.D. at 602 (noting that "creation of separate settlement funds for the FLSA class and the Rule 23 class . . . would better protect absent class members"); *Khanna*, 2014 WL 1379861, at *2 (approving hybrid settlement that allocated two-thirds of net settlement amount to state claims and one-third of net settlement amount to FLSA claims); *Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 1878918, at *3 (N.D. Cal. May 3, 2013) (same).

Plaintiffs contend that the settlement amount reflecting a discount of the total possible recovery is appropriate here for several reasons. First, the parties dispute whether the employees are covered by the agricultural exemption and are unaware of any court decisions resolving this issue under circumstances similar to those presented here. (Doc. No. 23-1 at 19.) Second, plaintiffs allege they were not provided with meal and rest periods, while defendants dispute that allegation, contending that plaintiffs simply chose not to take their offered meal and rest periods. (*Id.*) Third, the proposed settlement also accounts for the possibility of defendants filing for bankruptcy. (*Id.*) Considering these anticipated defenses and circumstances, the court will preliminarily approve the amount offered to settle the class and FLSA claims as reasonable.

/////

/////

b. *Attorneys' Fees*

When a negotiated class action settlement includes an award of attorneys' fees, the fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999). Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *Id.*; *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

The Ninth Circuit has approved two methods for determining attorneys' fees in cases where the fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citations omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. cv 14-08822 SJO (EX), 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. *Id.* In the Ninth Circuit, a 25 percent award is the "benchmark" percentage for attorneys' fees. *See Bluetooth*, 654 F.3d at 947 (setting a 25 percent benchmark); *Staton*, 327 F.3d at 952 (same); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (same). An explanation is necessary when the district court departs from the 25 percent benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

Plaintiffs bring various state law claims and, under California law, "[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003) (internal quotation marks and citations omitted). The court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The Ninth Circuit has recommended that district courts apply one method but cross-check the appropriateness of the amount by employing the other as well. *See Bluetooth*, 654 F.3d at 944.

Here, the proposed settlement provides that class counsel will seek an award of $112,500, which is 25 percent of the common fund. (Doc. No. 23-2 at ¶ 30.) This fee therefore meets the benchmark for this circuit. *See Bluetooth*, 654 F.3d at 947; *Staton*, 327 F.3d at 952; *Six (6) Mexican Workers*, 904 F.2d at 1311. Plaintiffs' counsel asserts that even under the lodestar approach, $112,500 is appropriate because it is less than the lodestar amount. (Doc. No. 23-2 at ¶ 30.) The court notes that the settlement agreement includes a "clear sailing" provision, in which defendants agree not to contest the class counsel's award of attorneys' fees or costs. (Doc. No. 23-1 at 20.) Although the "very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class," the existence of a clear sailing provision is not necessarily fatal to final approval. *Bluetooth*, 654 F.3d at 948 (citations omitted). Rather, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class." *Id.* (citing *Staton*, 327 F.3d at 954). Because the requested amount meets this circuit's 25 percent benchmark and counsel has represented that this amount also falls below the lodestar amount, the court is satisfied, for purposes of preliminary approval, that the award is reasonable and does not betray the class's interests. *See Eichen*, 229 F.3d at 1256–57 (noting that an explanation is necessary when the district court departs from the 25 percent benchmark). In connection with final approval, however, the court will again examine

the award of attorneys' fees, and plaintiffs' counsel is directed to provide the court with the necessary records for it to conduct a lodestar cross-check.

c.    *Incentive Payment*

While incentive awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *West Publ'g Corp.*, 563 F.3d at 958–59; *Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments."). Such payments are to be evaluated individually, and the court should look to factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, plaintiffs have requested incentive payments of $7,500 for each named plaintiff. (Doc. No. 23-2 at ¶ 24.) Counsel represents that the average payment of class members will be $2,186, although the actual amount will vary depending on each class member's days and hours worked, and hourly rate of pay. (*Id.* at ¶ 21.) The estimated maximum payment will be approximately $10,866 and the lowest payment will be approximately $4. (*Id.*) Thus, an incentive award of $7,500 is not substantially higher than the average—and in fact may be lower than the maximum—amount a class member could expect to receive under the proposed settlement in this action. (Doc. No. 23-1 at 18, 22.) Courts in this circuit have previously approved incentive awards in this range, and the court finds that for purposes of preliminary approval the award appears to be "not outside the realm of what has been approved as reasonable by other courts." *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (approving an incentive award of $7,500 to each class representative where average class recovery was approximately $500); *see also Davis v. Brown*

/////

*Shoe Co.*, No. 1:13-cv-01211-LJO-BAM, 2015 WL 6697929, at *12 (E.D. Cal. Nov. 3, 2015) (approving $7,000 incentive award where average class recovery was approximately $400).

Although the proposed incentive payments comprise 13 percent of the total recovery, plaintiffs argued at the September 17, 2019 hearing on the pending motion that the average recovery of the class members is more illuminating than the percentage of the total recovery. Plaintiffs' counsel also noted that a class of 112 members is relatively small, and the eight named plaintiffs therefore account for approximately 7 percent of the settlement class. Additionally, plaintiffs have submitted declarations stating that they have faced risks serving as class representatives, including retaliation from defendants and being blacklisted from future jobs, lack of support from other employees, and liability for costs if defendants prevailed in litigation. (Doc. No. 23-1 at 22.) They also aver that they spent approximately 60 hours working on this case, which included participating in numerous strategy meetings, assisting counsel in investigating the case, speaking with other workers about the case, and taking uncompensated time off to attend the two mediations. (*Id.*) Considering these facts, the court is persuaded that $7,500 is an appropriate incentive payment for the named plaintiffs. Thus, the requested incentive payment will be approved on a preliminary basis.

d.      *Release of Claims*

As part of the settlement, the released claims are limited to all claims, whether known or unknown, during the relevant time period (December 7, 2013 to May 3, 2019) that were alleged in the complaint based on the facts alleged in the complaint. (*Id.* at 23.) All settlement class member who do not opt out will be deemed to have released defendants from the released claims. (*Id.*) For members of the FLSA class, FLSA claims will only be released for those who affirmatively opt in. (*Id.*) The release therefore appropriately tracks the claims at issue in this case.

**D. Proposed Class Notice and Administration**

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement

under Rule 23(e).").  For a class certified under Federal Rule of Civil Procedure 23(b)(3), the notice must contain, in plain and clear language, (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may appear through an attorney if desired; (5) that the court will exclude members who seek exclusion; (6) the time and manner for requesting an exclusion; and (7) the binding effect of a class judgment on members of the class.  Fed. R. Civ. P. 23(c)(2)(B).  A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks and citations omitted).

Additionally, for proposed settlements under the FLSA, "the court [must] provide potential plaintiffs 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether or not to participate.'" *Adams v. Inter–Con Sec. Sys.*, 242 F.R.D. 530, 539 (N.D. Cal. 2007) (quoting *Hoffmann–La Roche v. Sperling*, 493 U.S. 165, 170 (1989)); *see generally* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

Here, the proposed settlement provides that the claims administrator will receive a list of class member names and last known contact information within five days of preliminary approval.  (Doc. No. 23-1 at 24.)  The claims administrator will subsequently send notice to those class members in both Spanish and English.  (*Id.*).  The claims administrator will make reasonable efforts to locate a correct address and resend notice for each envelope returned as undeliverable within 45 days.  (*Id.*)  Plaintiffs assert that the class notice's contents meet the requirements of Rule 23 and provide additional information, including:

> (1) the option to do nothing to receive a settlement payment, to dispute the information on which the settlement payment is based, and/or to object to the settlement; (2) deadlines to mail an objection and the Dispute form; (3) the approximate timeline for receiving settlement check; and (4) the deductions from the settlement fund, including for the incentive payments for the class representatives, and attorneys fees and costs.

(*Id.*)

Additionally, plaintiffs propose a FLSA notice separate from the class notice, although the class and FLSA documents will be sent in one envelope. (*Id.* at 25.) Plaintiffs believe separate notices will prevent confusion and emphasize the difference between the class and FLSA collective actions. (*Id.*) The proposed members of the FLSA collection action will receive a consent to join in/opt-in form. (*Id.*) The court finds that plaintiffs' proposed notices provide sufficient information to allow the putative class and collective members to make an informed decision about whether to opt-out of the class or opt-in to the collective. However, pursuant to discussion between the court and counsel at the September 17, 2019 hearing on this topic, the court will instruct the parties to revise plaintiffs' proposed notices to further ensure that putative class and collective members understand the difference between the class and collective actions. Revisions should include more prominent headings at the beginning of each notice that clearly identify whether the notice form concerns the class action or the FLSA collective action.

Plaintiffs also propose the following implementation schedule:

| Date | Event |
|------|-------|
| No later than five (5) days of the date of entry of this order | Defendants' counsel will provide the claims administrator and class counsel with the name and contact information for each member of the settlement class. |
| No later than fourteen (14) days from the date of this order ("Notice Date") | The claims administrator will mail to all settlement class members: (1) the class notice; (2) the dispute form; and (3) where applicable, the FLSA notice and FLSA consent to join/opt-in form. |
| Sixty (60) days from Notice Date | Deadline to mail FLSA consent to join/opt-in form. |
| Sixty (60) days from Notice Date | Deadline to mail dispute form to dispute information listed on the form, on which the estimated California settlement payment and, if applicable, FLSA settlement payment are based. |
| Sixty (60) days from Notice Date | Deadline to mail written objections. |

| | |
|---|---|
| Sixty (60) days from Notice Date | Deadline to mail request for exclusion. |
| December 17, 2019 at 9:30 a.m. | Final fairness hearing and hearing on motion for final approval, award of attorneys' fees and costs and class representative incentive payments. |
| November 1, 2019 | Defendants will deposit $75,000 to the qualified settlement fund ("QSF") established by the claims administrator. |
| The first day of every month beginning on December 1, 2019, for 25 months | Defendants will deposit $15,000 to the QSF established by the claims administrator. |
| Within thirty (30) days from receipt of the 1st payment (i.e., by December 1, 2019) | The claims administrator will (1) mail a check to the LWDA for the full PAGA payment of $7,500; (2) mail a check to class counsel for all attorneys' costs up to $8,900 (not fees); and (3) reimburse itself for the pro rata costs of claims administration. |
| Within thirty days from receipt of the 12th monthly payment (i.e., by November 1, 2020) | The claims administrator will (1) mail to each settlement class member a check in the amount of his or her pro rata settlement share; and (2) reimburse itself for the pro rata costs of claims administration. |
| Within thirty (30) days from receipt of the 25th monthly payment (i.e., by December 1, 2021) | The claims administrator will (1) mail to each settlement class member a check for payment of the remaining settlement awards; (2) reimburse itself for the remaining pro rata costs of claims administration; (3) mail a check to the class representatives in the amount of incentive payments approved by the court; and (4) mail a check to class counsel in the amount of attorneys' fees approved by the court. |

(*Id.* at 8–9.)

The court finds that the notice and the manner of notice proposed by plaintiffs meet the requirements of Federal Civil Procedure Rule 23(c)(2)(B) and 29 U.S.C. § 216(b), and that the proposed mail delivery is also appropriate under these circumstances.

/////

/////

/////

22

**CONCLUSION**

For the reasons stated above,

1.  Plaintiffs' motion for preliminary approval of class action settlement (Doc. No. 23) is granted;

2.  Plaintiffs' counsel, Enrique Martínez and John Hill, are appointed as class counsel;

3.  The named plaintiffs, Mario Cortez, Maria Cisneros, Antonio Toscano, Francisco Javier Gonzalez, Jesus Rodriguez, Cecilia Garcia, Jose Luis Raygoza, and Jose Guzman, are appointed as class representatives;

4.  The proposed notice and claim form conform with Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) and are approved;

5.  CPT Group Class Action Administrators is approved as claims administrator;

6.  The proposed settlement detailed herein is approved on a preliminary basis as fair and adequate;

7.  The hearing for final approval of the proposed settlement is set for December 17, 2019 at 9:30 a.m. before the undersigned in Courtroom 5, with the motion for final approval of class action settlement to be filed twenty-eight (28) days in advance of the final approval hearing, in accordance with Local Rule 230; and

8.  Plaintiffs' proposed settlement implementation schedule is adopted.

IT IS SO ORDERED.

Dated:   **September 20, 2019**                    _Dale A. Drozd_
                                              UNITED STATES DISTRICT JUDGE