UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO CORTEZ, et al.,<br><br>                Plaintiffs,<br><br>       v.<br><br>VIEIRA CUSTOM CHOPPING, INC., et al.<br><br>                Defendants. | No. 1:17-cv-01647-DAD-SKO<br><br>ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT, AWARD OF ENHANCEMENT PAYMENTS, AND AWARD OF ATTORNEYS' FEES<br><br>(Doc. No. 32) |

This matter came before the court on July 29, 2020, for hearing on plaintiffs' motion for final approval of a class action settlement, award of enhancement payments, and award of attorneys' fees. (Doc. No. 32.) Attorney Enrique Martínez appeared telephonically for plaintiffs and the class, and attorney Steven R. Wainess appeared telephonically for defendants. For the reasons that follow, the court will grant final approval of the class action settlement and award of attorneys' fees and costs.

**BACKGROUND**

This court previously granted preliminary approval of the class action settlement in this action on September 23, 2019. (Doc. No. 29.) Pertinent factual details as well as plaintiffs' allegations may be found in that order. Following the granting of preliminary approval, on

November 1, 2019, CPT Group, Inc., the settlement administrator, mailed the court-approved notice packets to 107 class members. (Doc. 32-4 at ¶ 6.) Seventy-one of those recipients were part of the Fair Labor Standards Act ("FLSA") collective and were sent a FLSA notice and consent form in their notice packet. (*Id.* at ¶ 7.) Twelve notice packets were returned undeliverable. (*Id.* at ¶ 9.) Thus far, no member has filed an objection to or opted out of the settlement. (*Id.* at ¶ 13; Doc. No. 32-2 at ¶ 22.) Forty-two employees opted into the FLSA collective action, which represents 58 percent of the FLSA wages. (Doc. No. 32-2 at ¶ 22.) No class members appeared at the final approval hearing.

## FINAL CERTIFICATION OF CLASS ACTION

The court conducted an examination of the class action factors during its preliminary approval of the settlement and found certification warranted. (*See* Doc. No. 29 at 7–12.) Since no additional issues concerning whether certification is warranted have been raised, the court does not repeat its prior analysis here, but instead reaffirms it and finds final certification appropriate. The following class is certified:

> all persons who are or were employed in California by Defendants as non-exempt (i) shop workers, (ii) farm equipment operators, (iii) truck drivers, and (iv) weighers at any point during the Class Period [December 7, 2013 through May 3, 2019] and who do not properly and timely opt out of the Settlement Class by having requested exclusion.

(*Id.* at 3.) The FLSA collective is nearly the same as the class action, but it excludes operators and the relevant time period is December 7, 2014 through May 3, 2019. (*Id.*) Additionally, and for the reasons stated in the order granting preliminary approval, plaintiffs Mario Cortez, Maria Cisneros, Antonio Toscano, Francisco Javier Gonzalez, Jesus Rodriguez, Cecilia Garcia, Jose Luis Raygoza, and Jose Guzman (collectively "plaintiffs") are confirmed as class representatives; attorneys John Hill and Enrique Martínez are confirmed as class counsel; and CPT Group, Inc. is confirmed as the settlement administrator.

## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Class actions require the approval of the district court prior to settlement. Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed,

or compromised only with the court's approval."). This requires that: (i) notice be sent to all class members; (ii) the court hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii) the parties seeking approval file a statement identifying the settlement agreement; and (iv) class members be given an opportunity to object. Fed. R. Civ. P. 23(e)(1)–(5). The settlement agreement was previously filed on the court docket (Doc. No. 23-2, Ex. 1), and class members have been given an opportunity to object. The court now turns to the adequacy of notice and its review of the settlement following the final fairness hearing.

**A.    Notice**

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Any notice of the settlement sent to the class should alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery." *Hanlon*, 150 F.3d at 1025. It is important for class notice to include information concerning the attorneys' fees to be awarded from the settlement, because it serves as "adequate notice of class counsel's interest in the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 n.15 (9th Cir. 2003) (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)) (noting that where notice references attorneys' fees only indirectly, "the courts must be all the more vigilant in protecting the interests of class members with regard to the fee award").

Here, the court reviewed the class notice that was proposed when the parties sought preliminary approval of the settlement and found it sufficient, subject to revisions that the parties ultimately made. (Doc. No. 29 at 19–22.) Notice was sent by the settlement administrator to 107 class members on November 11, 2019 via first-class mail. (Doc. No. 32-4 at ¶ 6.) Of those notices, CPT performed twelve address traces on notices returned as undeliverable. (*Id.* at ¶ 9.) As a result of skip trace effort and re-mail requests, fourteen notice packets were re-mailed. (*Id.*

at ¶ 10.) As of January 7, 2020, four packets were ultimately deemed undeliverable because no better address could be obtained. (*Id.*) It therefore appears that approximately 96 percent of the class members received notice of this settlement. CPT also received forty-two FLSA opt-in forms. (*Id.* at ¶ 13.) Since there are seventy-one individuals who are eligible to submit a claim under the FLSA settlement fund, this represents 59.2 percent participation for the FLSA settlement. At the hearing on the motion, class counsel stated that this response rate is higher than in most FLSA cases involving similarly situated class members and the court concurs in that observation. Counsel also emphasized that because there is no reversionary clause in this agreement, the funds will go directly to the class members who opt-ed in to the FLSA settlement.

The settlement administrator reports that no written objections or requests for exclusion were received. (*Id.* at ¶ 13.) Thus, all 107 class members will receive their portion of the class award. (*Id.*) No class members or their representatives appeared at the final fairness hearing to object to the settlement.

Given the above, the court concludes adequate notice was provided to the vast majority of the class here. *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (noting the court need not ensure all class members receive actual notice, only that "best practicable notice" is given); *Winans v. Emeritus Corp.*, No. 13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice."). The court accepts the reports of the settlement administrator and finds sufficient notice has been provided so as to satisfy Federal Rule of Civil Procedure 23(e)(1).

**B.      Final Fairness Determination**

On July 29, 2020, the court held a final fairness hearing, at which class counsel and defense counsel appeared telephonically. As noted, no class members, objectors, or counsel representing the same appeared at the hearing. The court now determines whether the settlement is fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2).

/////

/////

4

In assessing the fairness of a class action settlement, courts balance the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir. 2009). This court's analysis is guided by those factors. These settlement factors are non-exclusive, and each need not be discussed if they are irrelevant to a particular case. *Churchill Vill., L.L.C.*, 361 F.3d at 576 n.7. While the Ninth Circuit has observed that "strong judicial policy . . . favors settlements," *id.* at 576 (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)), where the parties reached a settlement agreement prior to class certification, the court has an independent duty on behalf of absent class members to be vigilant for any sign of collusion among the negotiating parties. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (noting "settlement class actions present unique due process concerns for absent class members" because the "inherent risk is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee") (internal quotation marks and citations omitted).

In particular, where a class action settlement agreement is reached prior to a class being certified by the court, "consideration of these eight *Churchill* factors alone is not enough to survive appellate review." *Id.* at 946–47. District courts must be watchful "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. These more subtle signs include: (i) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (ii) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," and therefore carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair

5

settlement on behalf of the class"; and (iii) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal citations and quotation marks omitted). The Ninth Circuit has also recognized that a version of a "clear sailing" arrangement exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to a certain amount. *Lane v. Facebook, Inc.*, 696 F.3d 811, 832 (9th Cir. 2012); *In re Bluetooth*, 654 F.3d at 947; *In re Toys R Us-Delaware, Inc.–Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("In general, a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling.") (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991)).

While this court has wide latitude to determine whether a settlement is substantively fair, it is held to a higher procedural standard and "must show it has explored comprehensively all factors, and must give a reasoned response to all non-frivolous objections." *Allen v. Bedolla*, 787 F.3d 1218, 1223–24 (9th Cir. 2015) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)). Thus, while the court should examine any relevant *Churchill* factors, the failure to review a pre-class certification settlement for those subtle signs of collusion identified above may constitute error. *Id.* at 1224–25.

1. Strength of Plaintiffs' Case

Plaintiffs anticipate the following challenges to succeeding should this action proceed in litigation. Plaintiffs explain that the law supports their position that the affirmative defense provided by the federal agricultural exemption does not apply to shop workers, truck drivers, and weighers. (Doc. No. 32-1 at 14.) Defendants, however, disagree, and argue that this affirmative defense applies. (*Id.*) The parties are not aware of any cases resolving whether the agricultural exemption applies under the circumstances of this case. (*Id.*) Other issues in dispute include whether defendants willfully failed to pay wages due upon termination and whether defendants intentionally failed to provide accurate wage statements. (*Id.*)

As to meal and rest breaks, plaintiffs contend that employees were not provided with meal and rest periods, but defendants dispute the allegation and argue that employees were provided

with meal and rest periods but chose not to take them. (*Id.*) According to plaintiffs, this dispute raises issues both for class certification and on the merits. (*Id.*) Lastly, there were real concerns about the possibility of defendants filing for bankruptcy. (*Id.*)

    2. <u>Risk, Expense, Complexity, and Likely Duration of Further Litigation, and Risk of Maintaining Class Action Status Through Trial</u>

  Because of the aforementioned challenges, plaintiffs believe this hybrid class and collective action would involve extensive litigation. (*Id.* at 15.) There would likely be a contested motion for class certification of the state law claims, with a risk of future decertification if the class were certified, as well as contested motions for conditional certification and decertification under the FLSA. (*Id.*) Plaintiffs also argue that there would be extensive discovery on the merits and likely cross motions for partial summary judgment. (*Id.*) Moreover, this action would be more complicated than a typical class action because it includes class claims under state law and a collective action FLSA claim under federal law. (*Id.*) Plaintiffs believe there could potentially be an appeal regarding the agricultural exemption. (*Id.*) Lastly, as stated above, there is a risk that defendants will file for bankruptcy, particularly after lengthy and expensive proceedings. (*Id.*)

    3. <u>The Amount Offered in Settlement</u>

  The settlement fund is $450,000, none of which will revert to defendants. (*Id.* at 16.) The fund is approximately 67 percent of the maximum potential damages for the primary claims, and including waiting time and inaccurate wage statement penalties, the recovery rate is approximately 37 percent. (*Id.*) The PAGA penalties are approximately $256,054 for meal period, rest break, and paystub violations. (*Id.*)

  Class counsel believes that the settlement fund will provide substantial cash relief to all class members, depending on each class member's length of employment and hourly rate of pay. (*Id.*) (citing Doc. No. 32-2 at ¶ 21). The average individual class member is expected to recover $2,254. (*Id.*) Many of the workers were employed for a short period of time and were seasonal workers, so the estimated payments range from $11,271 to $4. (*Id.*) Payments were calculated by using the pay periods, hours worked and hourly rate for each class member, and then

7

determining the percentage each worker would be entitled to from the total amount allegedly owed. (*Id.*) That percentage was used to calculate each class member's portion of the settlement fund.

Approximately 32 percent of the $242,600 net settlement fund, or approximately $78,335, will be distributed to the FLSA class. (*Id.*) Unclaimed FLSA wages will be redistributed among members of the collective action. (*Id.*) The settlement is structured for installment payments. (*Id.* at 17.) Class counsel determined that this payment plan maximizes the recoverable amount while preventing defendants from filing bankruptcy. (*Id.*) (citing Doc. No. 32-2 at ¶ 9). Class counsel relied on the opinion of a neutral and independent CPA who reviewed defendants' financial status, including financial statements, profit and loss statements, and tax returns. (*Id.*) Any unclaimed class funds will be paid to Centro de los Derechos del Migrante, Inc., a nonprofit organization, as *cy pres* recipient. (*Id.*) Overall, the court concludes the amount offered in settlement is not unreasonable in this case.

        4.    Extent of Discovery Completed

The court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or fraud. *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015). A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

Here, defendants produced the time and pay records for every member of the class, which allowed class counsel to accurately calculate the back wages and penalties. (Doc. No. 32-1 at 17) (citing Doc. No. 32-2 at ¶ 13). Plaintiffs also interviewed over thirty-five putative class members, obtaining information about the unpaid overtime and other violations. (*Id.*) Additionally, the parties engaged in arm's-length negotiations, including two mediations with professional mediators, and the settlement resulted from a mediator's proposal. (*Id.*) All of this litigation conduct supports the conclusion that this settlement is "not the product of fraud or overreaching

/////

by, or collusion among, the negotiating parties." *Class Plaintiffs*, 955 F.2d at 1290 (quoting *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985)).

### 5. Experience and Views of Counsel

Class counsel submits declarations concerning their experience, which state the following. Attorney Enrique Martínez graduated from Yale University in 1995 and UCLA Law School in 1999. (Doc. No. 32-2 at ¶ 30.) He began his legal career at Lieff, Cabraser, Heimann & Bernstein in San Francisco working primarily on civil rights and employment class actions. (*Id.*) Since then, he has litigated over forty wage and hour class actions involving overtime, meal periods, unreimbursed business expenses and other California Labor Code violations, leading to favorable settlements that have recouped millions of dollars in unpaid wages and penalties. (*Id.*) His career and practice have focused on labor and employment law, and he has primarily represented of low-wage and immigrant workers. (*Id.*) Attorney Martínez was admitted to the California Bar in 2000 and has been practicing for nineteen years. (*Id.*) He believes that the firm has represented and will continue to represent the best interests of the class and meet the requirements of Rule 23(g). (*Id.* at ¶ 29.) The court finds that the view of class counsel weighs in favor of granting final approval.

### 6. Presence of a Governmental Participant

The settlement agreement contemplates payment of $7,500 of the settlement amount to the California Labor & Workforce Development Agency under PAGA. (Doc. Nos. 32-1 at 18; 32-2, Ex.1 at ¶ 39.2.) This too weighs in favor of approval of the settlement. *See Adoma v. Univ. of Phx. Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012); *Zamora v. Ryder Integrated Logistics, Inc.*, No. 13-cv-2679-CAB-BGS, 2014 WL 9872803, at *10 (S.D. Cal. Dec. 23, 2014) (factoring civil PAGA penalties in favor of settlement approval).

### 7. Reaction of the Class to Proposed Settlement

The absence of objections to a proposed class action settlement supports the conclusion that the settlement is fair, reasonable, and adequate. *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.") (citing cases); *Barcia v. Contain-A-Way,*

*Inc.*, No. 07cv938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009). As mentioned previously, no class members have objected to or opted out of the settlement. The lack of objections or class members opting out of the settlement suggests general approval of the settlement by the class.

### 8. Subtle Signs of Collusion

The court now turns to a review of whether any of the "more subtle signs" of collusion noted by the Ninth Circuit are present here. *See In re Bluetooth*, 654 F.3d at 947. The award of attorneys' fees sought here—one-fourth of the settlement fund—is the benchmark for reasonable fee awards in the Ninth Circuit. *See Morales v. Stevco, Inc.*, No. 1:09-cv-00704-AWI-JLT, 2011 WL 5511767, at *12 (E.D. Cal. Nov. 10, 2011) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.") (quoting *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *In re Bluetooth*, 654 F.3d at 947 (setting a 25 percent benchmark); *Staton*, 327 F.3d at 952 (same); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (same). In addition, there is no reversionary clause in the settlement agreement, and any residue will be distributed *cy pres* to the designated beneficiary, Centro de los Derechos del Migrante, Inc. (Doc. Nos. 32-1 at 19; 32-2, Ex.1 at ¶ 37.)

The settlement agreement does include a "clear sailing" provision, in which defendant has agreed not to object to, oppose, or otherwise contest class counsel's award of attorneys' fees or costs. (Doc. No. 32-1 at 19.) Although the "very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class," *In re Bluetooth*, 654 F.3d at 948 (citation omitted), the existence of a clear sailing provision is not necessarily fatal to final approval. Rather, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class." *Id.* (citing *Staton*, 327 F.3d at 954). As plaintiffs note, (1) the fee request is only 25 percent of the common fund; (2) the amount requested is lower than or close to the lodestar amount; and (3) the class will receive a substantial monetary benefit. (Doc. No. 32-1 at 19.)

In sum, the more subtle signs of collusion that the Ninth Circuit has warned of are not sufficiently present here to warrant the court rejecting the proposed settlement. On balance, the court is satisfied that the settlement is not the product of collusion, and therefore concludes that the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e).

## ATTORNEYS' FEES, EXPENSES, AND INCENTIVE PAYMENTS

**A.     Attorneys' Fees**

This court has an "independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *In re Mercury*, 618 F.3d at 994; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *W. Publ'g Corp.*, 563 F.3d at 968.

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. 14-cv-08822-SJO-E, 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). The Ninth Circuit has generally set a 25 percent benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Reasons to vary the benchmark award may be found

when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD-Rental*, 779 F.3d at 954–55. Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.

Here, class counsel has requested an attorneys' fee award in the amount of $112,500, which is 25 percent of the common fund. (Doc. No. 32-2 at ¶ 38.1.) This is the benchmark percentage for this circuit. No class member has objected to any part of the settlement, including the amount of fees sought. (Doc. No. 32-1 at 20.)

The court will also conduct a lodestar cross-check to confirm whether a 25 percent award of attorneys' fees is appropriate here. Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662-OWW-MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. 06-cv-04149-MMM-SHx, 2008 WL 8150856 (C.D. Cal. July 21, 2008)). Beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, a lodestar multiplier is may be applied. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 NEWBERG ON CLASS ACTIONS § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from

one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting NEWBERG).

This court has previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and $545 and $695 for senior counsel and partners. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8 (E.D. Cal. Feb. 27, 2017). Since this hourly rate will be used solely for the purpose of cross-checking the percentage of the common fund awarded as attorneys' fees, the court does not attempt to define precisely the appropriate rates for this district. The court recognizes some judges in the Eastern District of California have approved similar rates in various class action settings, while others have approved lower rates. *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for attorney with 21 years of experience); *Gong-Chun v. Aetna Inc.*, No. 1:09-cv-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $300 and $420 per hour for associates, and between $490 and $695 per hour for senior counsel and partners). *But see In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 838–40 (E.D. Cal. 2016) (noting that courts in the Eastern District have found $350 to $400 per hour for attorneys with twenty or more years of experience, $250 to $350 per hour for attorneys with less than fifteen years of experience, and $125 to $200 per hour for attorneys with less than two years of experience reasonable); *Reyes v. CVS Pharm., Inc.*, No. 1:14-cv-00964-MJS, 2016 WL 3549260, at *12–13 (E.D. Cal. June 29, 2016) (awarding between $250 and $380 for attorneys with more than twenty years of experience, and between $175 and $300 for attorneys with less than ten years' experience); *Rosales v. El Rancho Farms*, No. 1:09-cv-00707-AWI, 2015 WL 4460635, at *25 (E.D. Cal. July 21, 2015) (awarding between $175 and $300 per hour for attorneys with less than ten years of experience and $380 per hour for attorneys with more than twenty years' experience); *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001, at *22 (E.D. Cal. June 11, 2012) (awarding between $264 and $336 per hour for associates, and $416 and $556 per hour for senior counsel and partners). Additionally, counsels' declarations are sufficient to establish the number of attorney hours worked on this

13

matter. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'") (internal citation omitted).

Class counsel represents that after exercising discretion in reducing some billed hours, the hours spent by each respective timekeeper using his firm's rates is summarized as follows:

| Timekeeper | Hours | Billable Rate | Lodestar |
|---|---|---|---|
| Enrique Martínez, Attorney | 238.1 | $625 | $148,812.50 |
| Jocelyn Sperling, Attorney | 73.5 | $625 | $45,937.50 |
| Jannet Torres, Paralegal | 204.6 | $115 | $23,529 |
| Lorena Soto, Paralegal | 18.4 | $115 | $2,116 |
| Adrian Bueno, Paralegal | 31 | $115 | $3,565 |
| Kenia Y. Carmona, Paralegal | 30.9 | $115 | $3,553.50 |
| Rosa I. Rico, Paralegal | 2.2 | $115 | $253 |
| **TOTAL** | **598.70** | | **$227,766.50** |

(Doc. Nos. 32-1 at 23; 32-2, Ex. 2; 32-3, Ex. A.)

The court will consider the hourly rates for attorneys and paralegals in the Eastern District of California.[1] Attorney Martínez has nineteen years of experience and an hourly rate of $625.

---

[1] The court recognizes that judges in the Eastern District of California frequently distinguish between the Fresno and Sacramento communities in determining hourly rates. The general rule for awarding attorneys' fee rates, however, is that "the rates of attorneys practicing in the ***forum district***" are used. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (emphasis added). The ultimate task of the court is to discern the "prevailing market rates in the relevant community." *See Gonzalez*, 729 F.3d at 1205 (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). District-wide rates should guide the court's award of attorneys' fees in cases originating in Fresno, particularly in specialized fields of litigation. *See, e.g.*, *id.* at 1206 (noting the appropriate rate was "the market rate prevailing in the Central District of California"); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (using the Northern District of California as the relevant legal community); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (same); *Davis v. Mason Cty.*, 927 F.2d 1473, 1488 (9th Cir. 1991) (using the Western District of Washington as the relevant local community), *overruled on other grounds as recognized in Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992). The

1  (Doc. No. 32-2 at ¶ 31.) Similarly, attorney Jocelyn Sperling has nineteen years of experience
2  and an hourly rate of $625. (Doc. No. 32-3 at ¶ 2, 11.) This hourly rate is within the range of
3  hourly rates previously found reasonable in this district, and thus the court will apply the $625 per
4  hour rate in calculating attorneys Martínez and Sperling's lodestar. Together, attorneys Martínez
5  and Sperling billed 311.6 hours on this case. (Doc. Nos. 32-2, Ex. 2; 32-3, Ex. A.) Additionally,
6  this court has previously held that the prevailing rate for paralegals in the Eastern District of
7  California is between $95 and $115 per hour. *Dakota Med., Inc. v. RehabCare Grp., Inc.*, No.
8  1:14-cv-02081-DAD-BAM, 2017 WL 4180497, at *9 n.1 (E.D. Cal. Sept. 21, 2017). While the
9  hourly rate for his firm's paralegals is $125, class counsel lowered the rate to $115 for purposes
10 of the lodestar cross-check. (Doc. No. 32-2 at ¶ 37.) Thus, the court will apply a rate of $115 per
11 hour here. Together, the paralegals billed 287.1 hours on this case. (Doc. No. 32-2, Ex. 2.)

12 Given the foregoing, the court determines that the lodestar amount for cross-check
13 purposes is $227,766.50. Because the requested amount for attorneys' fees here is well below the
14 lodestar cross-check amount, the court will approve an award of $112,500 in attorneys' fees,
15 equal to 25 percent of the common fund.

16 **B.      Expenses of Class Counsel**

17 Additionally, class counsel seeks to recover the costs expended on this litigation. Expense
18 awards "should be limited to typical out-of-pocket expenses that are charged to a fee paying client
19 and should be reasonable and necessary." *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d
20 1166, 1177 (S.D. Cal. 2007). This can include reimbursements for: "(1) meals, hotels, and
21 transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and
22 overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and
23 investigators; and (9) mediation fees." *Id*.

24 Class counsel declares that his firm incurred approximately $8,900 in costs related to this
25 case. (Doc. No. 32-2 at ¶ 40.) He declares that the majority of these costs have been for mediator
26 fees, data entry expenses, filing fees and travel expenses to meet with class members, while

27
28 court also notes that this is not a district court with separate divisions, as many are, but rather is a single district sitting in designated locations for venue purposes. *See* E.D. Cal. L.R. 120.

smaller amounts have been paid for other ordinary litigation costs and expenses such as mailing costs. (*Id.*) Class counsel submits a chart of all the costs and copies of the corresponding receipts. (Doc. No. 32-2, Ex. 4.) The court finds these expenses appropriate and will award counsel $8,900 in costs.

**C.     Incentive Award**

While incentive awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *W. Publ'g Corp.*, 563 F.3d at 958–59; *Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments."). Such payments are to be evaluated individually, and should look to factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, plaintiffs have requested incentive payments of $7,500 for each named plaintiff. (Doc. Nos. 32-2 at ¶ 25; 32-2, Ex. 1 at ¶ 38.2.) The average payment of class members will be $2,186, although the actual amount will vary depending on each class member's days and hours worked, and hourly rate of pay. (Doc. No. 23-1 at 19.) The estimated maximum payment will be approximately $10,866. (*Id.*) Courts in this circuit have previously approved similar incentive awards, and the court finds that the award is "not outside the realm of what has been approved as reasonable by other courts." *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (approving an incentive award of $7,500 to each class representative where average class recovery was approximately $500); *see also Davis v. Brown Shoe Co., Inc.*, No. 1:13-cv-01211-LJO-BAM, 2015 WL 6697929, at *12 (E.D. Cal. Nov. 3, 2015) (approving $7,000 incentive award where average class recovery was approximately $400). As the court noted in its order granting preliminary approval of the settlement, the named plaintiffs have faced risks serving as class representatives and spent

1  approximately 60 hours working on this case. (Doc. No. 29 at 19.) The court finds this incentive
2  payment is fair and does not destroy the adequacy of class representation in this case.

## APPROVAL OF FLSA SETTLEMENT

The complaint in this action also contains claims brought under the FLSA. Settlement of collective action claims under the FLSA requires court approval. *See Jones v. Agilysys, Inc.*, No. 12-cv-03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014). "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court. *See Barrentine v. Ark.–Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Yue Zhou v. Wang's Rest.*, No. 05-cv-0279-PVT, 2007 WL 2298046, at *1, n.1 (N.D. Cal. Aug. 8, 2007).

The Ninth Circuit has not established criteria for district courts to consider in determining whether an FLSA settlement should be approved. *See Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-cv-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). However, in this circuit, district courts have normally applied a widely used standard adopted by the Eleventh Circuit, looking to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Yue Zhou*, 2007 WL 2298046, at *1. "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted). A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute. *Id.*

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions. *Khanna v. Inter-Con Sec. Sys., Inc.*, No. 09-

17

cv-2214-KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013).  Having found this settlement to be fair and reasonable under Rule 23, the court therefore looks only to whether there is a bona fide dispute about the existence and extent of defendants' FLSA liability.  As stated above, a dispute exists as to whether the federal agricultural exemption under the FLSA applies to shop workers, truck drivers, and weighers. (Doc. No. 32-1 at 25.)  The parties are not aware of any cases resolving whether the agricultural exemption applies under the circumstances.  (*Id.*)  Accordingly, the court concludes there was a bona fide dispute as to FLSA liability and will approve the FLSA settlement.

## CONCLUSION

For the reasons stated above,

1. Plaintiffs' motion for final approval of the class action and collective action settlement (Doc. No. 32) is granted, the settlement class is certified, and the court approves the settlement as fair, reasonable, and adequate;

2. Mario Cortez, Maria Cisneros, Antonio Toscano, Francisco Javier Gonzalez, Jesus Rodriguez, Cecilia Garcia, Jose Luis Raygoza, and Jose Guzman are confirmed as class representative; attorneys Enrique Martínez and John Hill are confirmed as class counsel, and CPT Group, Inc. is confirmed as the settlement administrator;

3. Plaintiffs' motion for attorneys' fees, costs to class counsel, and incentive payment to the class representatives (Doc. No. 32) is granted, and the court awards the following sums:

   a. Class counsel shall receive $112,500 in attorneys' fees, and $8,900 in costs; and

   b. Named plaintiffs Mario Cortez, Maria Cisneros, Antonio Toscano, Francisco Javier Gonzalez, Jesus Rodriguez, Cecilia Garcia, Jose Luis Raygoza, and Jose Guzman shall each receive $7,500 as an incentive payment;

/////

/////

4. The parties are directed to effectuate all terms of the settlement agreement (Doc. No. 32-2, Ex. 1) and any deadlines or procedures for distribution therein, including distribution of any residue to the designated *cy pres* beneficiary Centro de los Derechos del Migrante, Inc.;

5. This action is dismissed with prejudice in accordance with the terms of the settlement agreement, with the court specifically retaining jurisdiction to consider any further applications arising out of or in connection with the settlement; and

6. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:  **July 30, 2020**                              /s/ Dale A. Drozd
                                                       UNITED STATES DISTRICT JUDGE